273 F.3d 249 (2nd Cir. 2001)
 DANIEL RAYMOND STEPHENSON, SUSAN STEPHENSON, DANIEL ANTHONY STEPHENSON, EMILY ELIZABETH STEPHENSON, JOE ISAACSON AND PHYLLIS LISA ISAACSON, PLAINTIFFS-APPELLANTS
v.
DOW CHEMICAL CO., MONSANTO CO., AMERICAN HOME PRODUCTS, INC., HERCULES INCORPORATED, OCCIDENTAL CHEMICAL CORPORATION, ULTRAMAR DIAMOND, CHEMICAL LAND HOLDINGS, INC., MAXUS ENERGY CORP., HARCROS CHEMICAL INC., SHAMROCK CORP., AND DOES 1-100, THOMPSON HAYWARD CHEMICAL CO., T-H AGRICULTURE & C.D.U. HOLDING, INC., UNIROYAL CHEMICAL CO., DEFENDANTS-APPELLEES
 Docket Nos. 00-7455(L), 00-9120(CON)
August Term, 2000
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: May 23, 2001
Decided: November 30, 2001
 
 Appeals from the judgment of the United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge) entered on April 7, 2000, dismissing claims of plaintiffs-appellants based on injuries allegedly stemming from exposure to the Agent Orange herbicide while serving in the United States military in Vietnam between 1962 and 1971. The district court determined that the plaintiffs-appellants' suit was precluded by a previous class action which settled similar claims against these defendants. VACATED AND REMANDED.
 
 
 1
 Stephen B. Murray, Jr., Murray Law Firm, New Orleans, La, for Appellants Daniel Raymond Stephenson, Susan Stephenson, Daniel Anthony Stephenson and Emily Elizabeth Stephenson.
 
 
 2
 Gerson S. Smoger, Smoger & Associates, Oakland, CA (Mark R. Cuker, Williams, Cuker & Berezofsky, Philadelphia, Pa, Ronald Simon, Simon & Associates, Washington, Dc, of counsel), for Appellants Joe Isaacson and Phyllis Lisa Isaacson.
 
 
 3
 Stephen Brock, Rivkin, Radler & Kremer, Llp, Uniondale, Ny, for Appellee Dow Chemical Co. (John C. Sabetta, Seyfarth, Shaw, Fairweather & Geraldson, New York, Ny, for Appellee Monsanto Co.; Michael M. Gordon, Cadwalader, Wickersham & Taft, New York, Ny, for Appellees Occidental Chemical Corporation, Ultramar Diamond Shamrock Corp., Maxus Energy Corp., Chemical Land Holdings, Inc.; William A. Krohley, Kelley, Drye & Warren Llp, New York, Ny, for Appellee Hercules Incorporated; Myron Kalish, Parker, Duryee, Rosoff & Haft, P.C., New York, Ny, for Appellees Uniroyal Chemical Co., Uniroyal, Inc., C.D.U. Holding, Inc.; Lawrence D'Aloise, Clark, Gagliardi & Miller, White Plains, Ny, for Appellees Nutrition Co., Inc., Thompson Hayward Chemical Co., T-h Agriculture, Harcros Chemicals, Inc.).
 
 
 4
 Steve Jensen, Baron & Budd, P.C., Dallas, Texas (Brent M. Rosenthal, Dallas, Texas; Leslie Brueckner, Trial Lawyers for Public Justice, Washington, District of Columbia; Arthur Bryant, Trial Lawyers for Public Justice, Oakland, California), for Amicus Curiae Trial Lawyers for Public Justice.
 
 
 5
 Before: Cardamone and F.I. Parker, Circuit Judges, and Spatt, District Judge.*
 
 F.I. Parker, Circuit Judge
 
 6
 This appeal requires us to determine the effect of the Supreme Court's landmark class action decisions in Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997), and Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999), on a previously settled class action concerning exposure to Agent Orange during the Vietnam War. Daniel Stephenson and Joe Isaacson are two Vietnam War veterans who allege that they were injured by exposure to Agent Orange while serving in the military in Vietnam. In the late 1990s, Stephenson and Isaacson (along with their families) filed separate lawsuits against manufacturers of Agent Orange. These lawsuits were eventually transferred to Judge Jack B. Weinstein in the Eastern District of New York by the Judicial Panel on Multidistrict Litigation ("MDL Panel").
 
 
 7
 In 1984, however, some twelve years before these suits, virtually identical claims against these defendants, brought by a class of military personnel who were exposed to Agent Orange while in Vietnam between 1961 and 1972, were globally settled. The Isaacson and Stephenson actions were brought in 1998 and 1999 respectively. Judge Weinstein, who presided over the 1984 settlement, dismissed the claims of Stephenson and Isaacson, concluding that the prior settlement barred their suits. On appeal, plaintiffs chiefly contend, citing Amchem and Ortiz, that they were inadequately represented and, therefore, due process considerations prevent the earlier class action settlement from precluding their claims. Because we agree that Amchem and Ortiz prevent applying res judicata to bar plaintiffs' claim, we vacate the district court's dismissal and remand for further proceedings.[1]
 
 I.
 BACKGROUND
 A. Prior Agent Orange Litigation
 
 8
 The Agent Orange class action litigation has a lengthy and complicated history, which we set forth in some detail below in order to convey the magnitude of this decision.
 
 
 9
 The first Agent Orange litigation began in the late 1970s, when individual veterans and their families filed class action suits in the Northern District of Illinois and Southern and Eastern Districts of New York, alleging that exposure to Agent Orange caused them injury. In re "Agent Orange" Prod. Liab. Litig., 635 F.2d 987, 988 (2d Cir. 1980) ("Agent Orange I"). By order of the MDL Panel, these actions were transferred to the Eastern District of New York and consolidated for pretrial purposes. Id. Plaintiffs asserted claims of negligent manufacture, strict liability, breach of warranty, intentional tort and nuisance. In re "Agent Orange" Prod. Liab. Litig., 597 F. Supp. 740, 750 (E.D.N.Y. 1984) ("Agent Orange III"); aff'd 818 F.2d 145 (2d Cir. 1987).
 
 
 10
 In 1983, the district court certified the following class under Federal Rule of Civil Procedure 23(b)(3):
 
 
 11
 those persons who were in the United States, New Zealand or Australian Armed Forces at any time from 1961 to 1972 who were injured while in or near Vietnam by exposure to Agent Orange or other phenoxy herbicides, including those composed in whole or in part of 2, 4, 5-trichlorophenoxyacetic acid or containing some amount of 2, 3, 7, 8- tetrachlorodibenzo-p-dioxin. The class also includes spouses, parents, and children of the veterans born before January 1, 1984, directly or derivatively injured as a result of the exposure.
 
 
 12
 In re "Agent Orange" Prod. Liab. Litig., 100 F.R.D. 718, 729 (E.D.N.Y. 1983) ("Agent Orange II"). To support class certification, the district court specifically found:
 
 
 13
 (1) that the affirmative defenses [including the "military contractor" defense] and the question of general causation are common to the class, (2) that those questions predominate over any questions affecting individual members, and (3) given the enormous potential size of plaintiffs' case and the judicial economies that would result from a class trial, a class action is superior to all other methods for a "fair and efficient adjudication of the controversy."
 
 
 14
 Id. at 724. The court also ordered notice by mail, print media, radio and television to be provided to class members, providing in part that persons who wished to opt out must do so by May 1, 1984. Id. at 729-32.
 
 
 15
 Trial of the class claims was to begin on May 7, 1984. In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 145, 154 (2d Cir. 1987) ("Agent Orange V"). On the eve of trial, the parties reached a settlement. Agent Orange III, 597 F. Supp. at 746. The settlement provided that defendants would pay $180 million into a settlement fund, $10 million of which would indemnify defendants against future state court actions alleging the same claims. See id. at 863-65. The settlement provided that "[t]he Class specifically includes persons who have not yet manifested injury." Id. at 865. Additionally, the settlement specifically stated that the district court would "retain jurisdiction over the Fund pending its final disposition." Id. at 866.
 
 
 16
 The district court held fairness hearings throughout the country, and approved the settlement as fair, reasonable and adequate. See id. at 746-47; see also Ryan v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.), 618 F. Supp. 623 (E.D.N.Y. 1985) (approving final settlement and dismissing merits). The court rejected the motion to certify a subclass of those class members who objected to terms of the settlement. Agent Orange III, 597 F. Supp. at 757. The court concluded that "[n]o purpose would have been served by appointing counsel for a subclass of disappointed claimants except to increase expenses to the class and delay proceedings."[2] Id.
 
 
 17
 Seventy-five percent of the $180 million was to be distributed directly "`to exposed veterans who suffer from long-term total disabilities and to the surviving spouses or children of exposed veterans who have died.'" Agent Orange V, 818 F.2d at 158. "A claimant would qualify for compensation by establishing exposure to Agent Orange and death or disability not `predominately' caused by trauma...." Id. Payments were to be made for ten years, beginning January 1, 1985 and ending December 31, 1994:
 
 
 18
 No payment will be made for death or disability occurring after December 31, 1994. Payment will be made for compensable deaths occurring both before and after January 1, 1985. Payments will be made for compensable disability to the extent that the period of disability falls within the ten years of the program's operation.
 
 
 19
 Ryan v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.), 611 F. Supp. 1396, 1417 (E.D.N.Y. 1985) ("Agent Orange IV"), rev'd in part on other grounds, In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 179 (2d Cir. 1987) ("Agent Orange VI"). "Most of the remaining [25%] of the settlement fund established the Agent Orange Class Assistance Program,... which made grants to agencies serving Vietnam veterans and their families." Ivy v. Diamond Shamrock Chems. Co. (In re "Agent Orange" Prod. Liab. Litig.), 996 F.2d 1425, 1429-30 (2d Cir. 1993) ("Ivy/Hartman II"). Explaining the creation of this kind of fund, Judge Weinstein stated that it was "[t]he most practicable and equitable method of distributing benefits to" those claimants who did not meet eligibility criteria for cash payments. Agent Orange IV, 611 F. Supp. at 1431.
 
 
 20
 We affirmed class certification, settlement approval and much of the distribution plan. See Agent Orange V, 818 F.2d 145, 163-74 (approving settlement and class certification); Agent Orange VI, 818 F.2d 179, 184-86 (reversing only the portion of distribution plan that allowed an independent foundation to monitor the funding of projects to assist the class, but allowing district court to establish and supervise such a fund). We rejected challenges to class certification, concluding that "class certification was justified under Rule 23(b)(3) due to the centrality of the military contractor defense." Agent Orange V, 818 F.2d at 166-67. We specifically rejected an attack based on adequacy of representation, again based on the military contractor defense which, we reasoned, "would have precluded recovery by all plaintiffs, irrespective of the strengths, weaknesses, or idiosyncrasies of their claims." Id. at 167. We additionally concluded that the notice scheme devised by Judge Weinstein was the "best notice practicable" under Federal Rule of Civil Procedure 23(c)(2). Id. at 167-69. Finally, we affirmed the settlement as fair, reasonable and adequate, given the serious weaknesses of the plaintiffs' claims. See id. at 170-74.
 
 
 21
 In 1989 and 1990, two purported class actions, Ivy v. Diamond Shamrock Chemicals Co. and Hartman v. Diamond Shamrock Chemicals Co., were filed in Texas state courts. Ivy/Hartman II, 996 F.2d at 1430. These suits, on behalf of Vietnam veterans exposed to Agent Orange,[3] sought compensatory and punitive damages against the same companies as in the settled suit. See Ivy/Hartman I, 781 F.Supp. at 912-13. The plaintiffs alleged that their injuries manifested only after the May 7, 1984 settlement. See id. Additionally, the Ivy/Hartman plaintiffs expressly disclaimed any reliance on federal law, asserting only state law claims. See id. Nonetheless, the defendants removed the actions to federal court on the grounds that these claims had already been asserted and litigated in federal court. See id. at 913. The MDL Panel transferred the actions to Judge Weinstein in the Eastern District of New York. See Ivy/Hartman II, 996 F.2d at 1430.
 
 
 22
 The district court rejected plaintiffs' motion to remand, reasoning that it had jurisdiction over the class action because it "ha[d] authority to ensure that [its prior orders] and the Settlement Agreement [were] enforced," especially given the injunction it issued enjoining all class members from commencing any action arising out of Agent Orange exposure. Ivy/Hartman I, 781 F. Supp. at 914, 916. In support of its decision, the district court cited the All-Writs Act, 28 U.S.C. § 1651 (1994), which authorizes writs "necessary or appropriate" in aid of its jurisdiction. See id. at 918.
 
 
 23
 The district court then turned to the plaintiffs' substantive arguments that it was unfair to bind them to the settlement when their injuries were not manifested until after the settlement had been reached. The district court rejected this argument, based on the following reasoning:
 
 
 24
 All of the courts which considered the Agent Orange Settlement were fully cognizant of the conflict arguments now hypothesized by the plaintiffs and took steps to minimize the problem in the way they arranged for long-term administration of the Settlement Fund.
 
 
 25
 In many cases the conflict between the interests of present and future claimants is more imagined than real. In the instant case, for example, the injustice wrought upon the plaintiffs is nonexistent. These plaintiffs, like all class members who suffer death or disability before the end of 1994, are eligible for compensation from the Agent Orange Payment Fund. The relevant latency periods and the age of the veterans ensure that almost all valid claims will be revealed before that time.
 
 
 26
 Even when it is proper and necessary for the courts to be solicitous of the interests of future claimants, the courts cannot ignore the interests of presently injured plaintiffs as well as defendants in achieving a settlement. Class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability. Making settlement of Rule 23 suits too difficult will work harms upon plaintiffs, defendants, the courts, and the general public.
 
 
 27
 Id. at 919-20 (emphasis added). The district court therefore dismissed the Ivy/Hartman litigation.
 
 
 28
 We affirmed the district court's dismissal. Ivy/Hartman II, 996 F.2d 1425, 1439. We agreed with the district court's assertion of federal jurisdiction under the All Writs Act and held:
 
 
 29
 A district court, in exceptional circumstances, may use its All Writs authority to remove an otherwise unremovable state court case in order to "effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."
 
 
 30
 Id. at 1431 (quoting United States v. N.Y. Tel. Co., 434 U.S. 159, 172 (1977)).
 
 
 31
 We then addressed plaintiffs' argument that they were not members of the prior class, because they were not "injured" as the term was used in the class definition. Id. at 1433. We concluded that, for the purposes of the Agent Orange litigation, "injury occurs when a deleterious substance enters a person's body, even though its adverse effects are not immediately apparent." Id. at 1433-34. We emphasized that the plaintiffs in the original suit had sought to include such "at-risk" plaintiffs, over defendants' objections, and that we had already affirmed the inclusion of these plaintiffs in the class. See id.
 
 
 32
 We likewise rejected plaintiffs' argument that their due process rights were violated because they were denied adequate representation and adequate notice in the prior action. See id. at 1435-36. We reasoned that "providing individual notice and opt-out rights to persons who are unaware of an injury would probably do little good." Id. at 1435. We concluded that the plaintiffs were adequately represented in the prior action, and that a subclass of future claimants was unnecessary "`because of the way [the settlement] was structured to cover future claimants.'" Id. at 1436 (quoting Ivy/Hartman I, 781 F. Supp. at 919)(alteration in original).
 
 
 33
 Shortly before our decision in Ivy/Hartman II, the $10 million set aside for indemnification from state court Agent Orange judgments was transferred to the Class Assistance Program, because the district court deemed such a fund unnecessary. The distribution activities had begun in 1988, and concluded in June 1997. During the ten year period of the settlement, $196.5 million was distributed as cash payments to approximately 52,000 class members. The program paid approximately $52 million to "after-manifested" claimants, whose deaths or disabilities occurred after May 7, 1984. Approximately $71.3 million of the fund was distributed through the Class Assistance Program.
 
 B. The Instant Litigation
 1. The Parties
 
 34
 Daniel Stephenson served in Vietnam from 1965 to 1970, serving both on the ground in Vietnam and as a helicopter pilot in Vietnam. He alleges that he was in regular contact with Agent Orange during that time. On February 19, 1998, he was diagnosed with multiple myeloma, a bone marrow cancer, and has undergone a bone marrow transplant.
 
 
 35
 Joe Isaacson served in Vietnam from 1968 to 1969 as a crew chief in the Air Force, and worked at a base for airplanes which sprayed various herbicides, including Agent Orange. In 1996, Isaacson was diagnosed with non-Hodgkins lymphoma.
 
 
 36
 Defendants are chemical manufacturers who produced and sold to the United States Government the herbicide Agent Orange during the Vietnam War.
 
 2. Proceedings Below
 
 37
 In August 1998, Isaacson filed suit in New Jersey state court, asserting claims only under state law. Defendants quickly removed the case to federal court and Isaacson's subsequent motion to remand was denied by Chief Judge Anne Thompson in the District of New Jersey. Thereafter, Isaacson's case was transferred to Judge Weinstein by the MDL Panel.
 
 
 38
 Stephenson filed his suit pro se in the Western District of Louisiana in February 1999, but he soon retained his current counsel. In April 1999, defendants moved for and were granted a Conditional Transfer Order by the MDL Panel, transferring this action to Judge Weinstein. After Stephenson's case was transferred, it was consolidated with the Isaacson case.
 
 
 39
 Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that plaintiffs' claims were barred by the 1984 class action settlement and subsequent final judgment. Judge Weinstein granted this motion from the bench following argument, rejecting plaintiffs' argument that they were inadequately represented and concluding that plaintiffs' suit was an impermissible collateral attack on the prior settlement.
 
 
 40
 Because we disagree with this conclusion, based on the Supreme Court's holdings in Amchem and Ortiz, we must vacate the district court's dismissal and remand for further proceedings.
 
 II. DISCUSSION
 
 41
 "We review a dismissal under Rule 12(b)(6) de novo, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiffs' favor." Ganino v. Citizens Utilities Co., 228 F.3d 154, 161 (2d Cir. 2000).
 
 A. Removal Jurisdiction
 
 42
 The Isaacson appellants contend that Isaacson's case should have been remanded for lack of federal jurisdiction. Isaacson initially filed suit in New Jersey state court, alleging only claims under state law. Defendants removed his case to the District of New Jersey, where Isaacson's subsequent motion to remand was denied.
 
 
 43
 The district court based removal jurisdiction on the All Writs Act, 28 U.S.C. § 1651,[4] and concluded that the court best suited to determine the settlement's preclusive effect would be the court that approved the settlement. Ivy/Hartman I, 781 F.Supp. at 918.
 
 
 44
 "A district court, in exceptional circumstances, may use its All Writs authority to remove an otherwise unremovable... case in order to `effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" Ivy/Hartman II, 996 F.2d at 1431 (quoting United States v. N.Y. Tel. Co., 434 U.S. 159, 172 (1977)). In Ivy/Hartman II, we concluded that such exceptional circumstances warranted removal jurisdiction in that case because "[i]f Agent Orange victims were allowed to maintain separate actions in state court, the deleterious effect on the... settlement mechanism would be substantial." Id. Isaacson contends that this case, however, presents no such "exceptional circumstances," because the settlement fund no longer exists.
 
 
 45
 We disagree. Although the settlement funds are now depleted, maintenance of these actions in state court necessarily requires interpretation of the scope of the Agent Orange Settlement and could have the potential to disturb the judgment underlying the settlement depending on the position taken by defendants. Although we ultimately hold that Isaacson's suit is not precluded by the settlement judgment, removal and transfer were appropriate simply for the purpose of determining the settlement's preclusive effect.[5] Indeed, the court "best situated to make this determination" is the court that entered judgment. Id. This conclusion is not altered by our determination that the district court here erred.
 
 B. Collateral Attack
 
 46
 The parties devote much energy to debating the permissibility of a collateral attack in this case. Plaintiffs assert that, since the Supreme Court's decision in Hansberry v. Lee, 311 U.S. 32 (1940), courts have allowed collateral attacks on class action judgments based upon due process concerns. Defendants strenuously disagree and contend that to allow plaintiffs' suit to go forward, in the face of the 1984 global settlement, would "violate defendants' right to due process of law." Appellees' Br. at 39. Defendants likewise strenuously argue that the district court's injunction against future litigation prevents these appellants from maintaining their actions. While it is true that "[a]n injunction must be obeyed until modified or dissolved, and its unconstitutionality is no defense to disobedience," Met. Opera Ass'n. v. Local 100, Hotel Employees and Rest. Employees Int'l Union, 239 F.3d 172, 176 (2d Cir. 2001) (citing Walker v. Birmingham, 388 U.S. 307, 314-21 (1967)), defendants' injunction-based argument misses the point. The injunction was part and parcel of the judgment that plaintiffs contend failed to afford them adequate representation. If plaintiffs' inadequate representation allegations prevail, as we so conclude, the judgment, which includes the injunction on which defendants rely, is not binding as to these plaintiffs.
 
 
 47
 Defendants contend that Supreme Court precedent permits a collateral attack on a class action judgment "only where there has been no prior determination of absent class members' due process rights." Appellees' Br. at 40. According to defendants, because the "due process rights of absent class members have been extensively litigated in the Agent Orange litigation," Appellees' Br. at 44, these plaintiffs cannot now attack those prior determinations. We reject defendants' arguments and conclude that plaintiffs' collateral attack, which seeks only to prevent the prior settlement from operating as res judicata to their claims, is permissible.
 
 
 48
 First, even if, as defendants contend, collateral attack is only permitted where there has been no prior determination of the absent class members' rights, plaintiffs' collateral attack is allowed. It is true that, on direct appeal and in the Ivy/Hartman litigation, we previously concluded that there was adequate representation of all class members in the original Agent Orange settlement. However, neither this Court nor the district court has addressed specifically the adequacy of representation for those members of the class whose injuries manifested after depletion of the settlements funds. See Ivy/Hartman II, 996 F.2d at 1436 (creating a subclass of future claimants was unnecessary because the settlement covered such claimants); Ivy/Hartman I, 781 F. Supp. at 919 ("These plaintiffs, like all class members who suffer death or disability before the end of 1994, are eligible for compensation from the Agent Orange Payment Fund." (emphasis added.)) Therefore, even accepting defendants' argument, plaintiffs' suit can go forward because there has been no prior adequacy of representation determination with respect to individuals whose claims arise after the depletion of the settlement fund.[6]
 
 
 49
 Second, the propriety of a collateral attack such as this is amply supported by precedent. In Hansberry v. Lee, 311 U.S. 32 (1940), the Supreme Court entertained a collateral attack on an Illinois state court class action judgment that purported to bind the plaintiffs. The Court held that class action judgments can only bind absent class members where "the interests of those not joined are of the same class as the interests of those who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation." Id. at 41, 61 S. Ct. 115; cf. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 805 (1985) ("[I]t is true that a court adjudicating a dispute may not be able to predetermine the res judicata effect of its own judgment."). Additionally, we have previously stated that a "[j]udgment in a class action is not secure from collateral attack unless the absentees were adequately and vigorously represented." Van Gemert v. Boeing Co., 590 F.2d 433, 440 n.15 (2d Cir. 1978); aff'd 444 U.S. 472 (1980).
 
 
 50
 Allowing plaintiffs' suit would be consistent with many other circuit decisions recognizing the ability of later plaintiffs to attack the adequacy of representation in an earlier class action. For example, the Fifth Circuit holds:
 
 
 51
 To answer the question whether the class representative adequately represented the class so that the judgment in the class suit will bind the absent members of the class requires a two-pronged inquiry: (1) Did the trial court in the first suit correctly determine, initially, that the representative would adequately represent the class? and (2) Does it appear, after the termination of the suit, that the class representative adequately protected the interest of the class? The first question involves us in a collateral review of the... [trial] court's determination to permit the suit to proceed as a class action with [the named plaintiff] as the representative, while the second involves a review of the class representative's conduct of the entire suit - an inquiry which is not required to be made by the trial court but which is appropriate in a collateral attack on the judgment....
 
 
 52
 Gonzales v. Cassidy, 474 F.2d 67, 72 (5th Cir. 1973); see also Williams v. Gen. Elec. Capital Auto Lease, Inc., 159 F.3d 266 (7th Cir. 1998) (addressing due process considerations of prior class action settlement on collateral attack); Twigg v. Sears, Roebuck & Co., 153 F.3d 1222, 1226 (11th Cir. 1998) ("Before the bar of claim preclusion may be applied to the claim of an absent class member, it must be demonstrated that invocation of the bar is consistent with due process, and an absent class member may collaterally attack the prior judgment on the ground that to apply claim preclusion would deny him due process."); Crawford v. Honig, 37 F.3d 485, 488 (9th Cir. 1994) (finding that when absent class members were not adequately represented in a post-settlement modification of a class-wide injunction, "res judicata did not bar them from collaterally attacking the [modification] proceedings")(citation omitted).
 
 
 53
 Defendants' citation to Federated Department Stores, Inc. v. Moitie, 452 U.S. 394 (1981), is unavailing. According to that case, a "judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause [of action]." Id. at 398, 101 S. Ct. 2424 (alteration in original). Defendants' reliance on this case misperceives plaintiffs' argument. Plaintiffs do not attack the merits or finality of the settlement itself, but instead argue that they were not proper parties to that judgment. If plaintiffs were not proper parties to that judgment, as we conclude below, res judicata cannot defeat their claims. Further, such collateral review would not, as defendants maintain, violate defendants' due process rights by exposing them to double liability. Exposure to liability here is not duplicative if plaintiffs were never proper parties to the prior judgment in the first place.
 
 
 54
 We therefore hold that a collateral attack to contest the application of res judicata is available. We turn next to the merits of this attack.
 
 
 55
 C. Due Process Considerations and Res Judicata
 
 
 56
 The doctrine of res judicata dictates that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 n.6 (1982). Res judicata ordinarily applies "if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Servs., Inc.), 762 F.2d 185, 190 (2d Cir. 1985).
 
 
 57
 Plaintiffs' argument focuses on element number three in the res judicata analysis: whether they are parties bound by the settlement. Plaintiffs rely primarily on the United States Supreme Court's decisions in Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997), and Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999).
 
 
 58
 In Amchem, the Supreme Court confronted, on direct appeal, a challenge to class certification for settlement purposes in an asbestos litigation. The class defined in the complaint included both individuals who were presently injured as well as individuals who had only been exposed to asbestos. Amchem, 521 U.S. at 602 n.5. The Supreme Court held that this "sprawling" class was improperly certified under Federal Rules of Civil Procedure 23(a) and (b). Id. at 622-28, 117 S. Ct. 2231. Specifically, the Court held that Rule 23(a)(4)'s requirement that the named parties "`will fairly and adequately protect the interests of the class'" had not been satisfied. Id. at 625-26, 117 S. Ct. 2231. The Court reasoned that
 
 
 59
 named parties with diverse medical conditions sought to act on behalf of a single giant class rather than on behalf of discrete subclasses. In significant respects, the interests of those within the single class are not aligned. Most saliently, for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future.
 
 
 60
 Id. at 626, 117 S. Ct. 2331.
 
 
 61
 Amchem also implied, but did not decide, that the notice provided to exposure-only class members was likewise inadequate. The Court stated that, because many exposure-only individuals, may not be aware of their exposure or realize the ramifications of exposure, "those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out." Id. at 627, 117 S. Ct. 2231.
 
 
 62
 In Ortiz, the Supreme Court again addressed a settlement-only class action in the asbestos litigation context. Ortiz, however, involved a settlement-only limited fund class under Rule 23(b)(1)(B). The Supreme Court ultimately held that the class could not be maintained under Rule 23(b)(1)(B), because "the limit of the fund was determined by treating the settlement agreement as dispositive, an error magnified" by conflicted counsel. Ortiz, 527 U.S. at 864. In so holding, Ortiz noted that "it is obvious after Amchem that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel." Id. at 856, 119 S. Ct 2295.
 
 
 63
 Res judicata generally applies to bind absent class members except where to do so would violate due process. Gonzales, 474 F.2d at 74. Due process requires adequate representation "at all times" throughout the litigation, notice "reasonably calculated... to apprise interested parties of the pendency of the action," and an opportunity to opt out. Shutts, 472 U.S. at 811-12.
 
 
 64
 Both Stephenson and Isaacson fall within the class definition of the prior litigation: they served in the United States military, stationed in Vietnam, between 1961 and 1972, and were allegedly injured by exposure to Agent Orange. However, they both learned of their allegedly Agent Orange-related injuries only after the 1984 settlement fund had expired in 1994. Because the prior litigation purported to settle all future claims, but only provided for recovery for those whose death or disability was discovered prior to 1994, the conflict between Stephenson and Isaacson and the class representatives becomes apparent.[7] No provision was made for post-1994 claimants, and the settlement fund was permitted to terminate in 1994. Amchem and Ortiz suggest that Stephenson and Isaacson were not adequately represented in the prior Agent Orange litigation.[8] Those cases indicate that a class which purports to represent both present and future claimants may encounter internal conflicts.[9]
 
 
 65
 Defendants contend that there was, in fact, no conflict because all class members' claims were equally meritless and would have been defeated by the "military contractor" defense. This argument misses the mark. At this stage, we are only addressing whether plaintiffs' claims should be barred by res judicata. We are therefore concerned only with whether they were afforded due process in the earlier litigation. Part of the due process inquiry (and part of the Rule 23(a) class certification requirements) involves assessing adequacy of representation and intra-class conflicts. The ultimate merits of the claims have no bearing on whether the class previously certified adequately represented these plaintiffs.
 
 
 66
 Because these plaintiffs were inadequately represented in the prior litigation, they were not proper parties and cannot be bound by the settlement. We therefore must vacate the district court's dismissal and remand for further proceedings. We, of course, express no opinion as to the ultimate merits of plaintiffs' claims.
 
 III. CONCLUSION
 
 67
 For the foregoing reasons, we hold that the prior Agent Orange settlement does not preclude these plaintiffs from asserting their claims alleging injury due to Agent Orange exposure. Because these plaintiffs were inadequately represented in the prior litigation, based on the Supreme Court's teaching in Amchem and Ortiz, they were not proper parties to the litigation. We therefore vacate the district court's dismissal and remand the case to the district court for further proceedings consistent with this opinion.
 
 
 
 NOTES:
 
 
 *
 The Honorable Arthur D. Spatt, of the United States District Court for the Eastern District of New York, sitting by designation.
 
 
 [1]
 Trial Lawyers for Public Justice, as amicus curiae, filed a brief in support of the plaintiffs' position.
 
 
 [2]
 The district court had earlier rejected a motion to establish a plaintiff's steering committee, reasoning that lead counsel had expressed willingness to "consider all ideas and suggestions submitted by attorneys for separate plaintiffs." In re "Agent Orange" Prod. Liab. Litig., 534 F. Supp. 1046, 1052-53 (E.D.N.Y. 1982).
 
 
 [3]
 Two plaintiffs in the Ivy litigation alleged injuries stemming from Agent Orange exposure while acting in a civilian capacity, and thus were not members of the class bound by the 1984 settlement. Their claims were severed from the claims of the other plaintiffs. See Ryan v. Dow Chem. Co.(In re "Agent Orange" Prod. Liab. Litig., 781 F. Supp. 902, 914 (E.D.N.Y. 1991) ("Ivy/Hartman I"); aff'd sub nom Ivy v. Diamond Shamrock Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.), 996 F.2d 1425 (2d. Cir. 1993).
 
 
 [4]
 This section provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).
 
 
 [5]
 In Ivy/Hartman II, this Court noted that "[i]t is difficult to conceive of any state court properly addressing a victim's tort claim without first deciding the scope of the Agent Orange I class action and settlement." Ivy/Hartman II, 996 F.2d at 1431. Whether or not funds from the original settlement pool remained available for these victims, a state court could not consider the merits of the plaintiffs' cases without first deciding whether the original Agent Orange Settlement Agreement addressed (and therefore now precluded) their claims. As we held in Ivy/Hartman II, "[t]he court best situated [to determine whether a plaintiff's claim is barred by the original settlement] is the court that approved the settlement and entered [the] judgment enforcing it." Id. Although we express no opinion as to whether maintenance of these actions in the state court would actually disturb the settlement, we find the need for interpretation of the settlement and the possibility of such disturbance a sufficient basis for the "extraordinary circumstances" warranting removal under the All Writs Act.
 
 
 [6]
 Defendants rely heavily on a recent Ninth Circuit decision, Epstein v. MCA, Inc., 179 F.3d 641 (9th Cir. 1999), in support of their limited collateral review theory. Epstein held that a collateral attack is available only "to consider whether the procedures in the prior litigation afforded the party against whom the earlier judgment is asserted a `full and fair opportunity' to litigate the claim or issue." Id. at 648-49. According to the Ninth Circuit,
 Due process requires that an absent class member's right to adequate representation be protected by the adoption of the appropriate procedures by the certifying court and by the courts that review its determinations; due process does not require collateral second-guessing of those determinations and that review.
 Id. at 648. Here, neither the district court nor this Court has determined the adequacy of representation with respect to these plaintiffs whose injuries did not arise until after the settlement expired. Without adopting the Ninth Circuit's decision in Epstein, we conclude that plaintiffs' collateral attack is proper even under its standard.
 
 
 [7]
 Again, we distinguish the Ivy/Hartman cases, which held that pre-1994 claimants were adequately represented in the prior Agent Orange litigation. This conclusion was based, at least in part, on those claimants' eligibility for compensation from the settlement fund. See Ivy/Hartman I, 781 F.Supp. at 919; Ivy/Hartman II, 996 F.2d at 1435-36.
 
 
 [8]
 We also note that plaintiffs likely received inadequate notice. Shutts provides that adequate notice is necessary to bind absent class members. Shutts, 472 U.S. at 812. As described earlier, Amchem indicates that effective notice could likely not ever be given to exposure-only class members. Amchem, 521 U.S. at 628. Because we have already concluded that these plaintiffs were inadequately represented, and thus were not proper parties to the prior litigation, we need not definitively decide whether notice was adequate.
 
 
 [9]
 Both Amchem and Ortiz addressed the possibility of internal conflicts in the limited context of settlement-only classes. For such certifications, Amchem held that internal conflicts would prevent adequate representation when the named plaintiffs (having present injuries) did not act with "a proper understanding of their representational responsibilities" towards class members whose injuries would surface later. Amchem,521 U.S. at 627-28. Ortiz, while recognizing the need for some limit to "reclassification with separate counsel," found that because of the lack of procedural safeguards like subclasses in the Ortiz certification, the settlement-only class presented could not adequately protect included future plaintiffs. Ortiz,527 U.S. at 855-57, 864-65(noting that the application of Rule 23(b)(1)(B) to a plan addressing actual and potential tort claims is "subject to question").