In re: **NATIONAL LIFE INSURANCE COMPANY**

**No. 2:97–CV–314.**

United States District Court,
D. Vermont.

April 15, 2002.

Richard R. Goldsborough, Esq., Perry, Schmucker & Goldsborough, PLLC, South Burlington, VT, Debra Brewer Hayes, Esq., Christopher Kesler, Esq., Fleming, Hovenkamp & Grayson, P.C., Houston, TX, Jules B. LeBlanc, III, Esq., Jody Edward Anderman, Esq., Charles Sterling Lambert, Jr., Esq., LeBlanc, Maples & Waddell, Baton Rouge, LA, for Walter J Birdsall, Betty C Birdsall.

Andrew Carey Boxer, Esq., Kiel, Ellis & Boxer, Springfield, VT, Michael G. Lange, Esq., Glen DeValerio, Esq., John P. Zavez, Esq., Berman, DeValerio & Pease, Boston, MA, Richard J. Vita, Esq., Boston, MA, for Elizabeth B. Akerley.

Louis R. Lucas, Esq., Lucas & Thompson, Memphis, TN, Michael D. Craig, Esq., William M. Sweetnam, Esq., Khalil Cox, Esq., Schiffrin & Barroway, LLP, Bala Cynwyd, PA, for Gerald L. Moore, Darwyn F. Kelley.

Ronald Alan Fox, Biggam, Fox & Skinner, Montpelier, VT, Peter A. Lagorio, Esq., Gilman and Pastor, Boston, MA, Kenneth G. Gilman, Esq., Gilman and Pastor, LLP, Sauges, MA, Douglas M. Brooks, Esq., Kelly, Libby & Hoopes, P.C., Boston, MA, for Claude H. Venne.

Jere L. Beasley, Esq., Wilson Daniel Miles, III, Esq., Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, AL, for James L. Gould.

Robert Stephen Burke, National Life Insurance Company, Montpelier, VT, Jeffrey B. Rudman, Douglas John Nash, Esq., John G. Fabiano, Esq., Andrea J. Robinson, Esq., N. Roland Savage, Esq., Jonathan A. Shapiro, Esq., Hale and Dorr, LLP, Boston, MA, Covert J. Geary, Esq., Raymond Joseph Salassi, Jr., Esq., Jones, Walker, Waechter, Poitevant, Carrere &

Denegre, New Orleans, LA, for National Life Insurance Company of Vermont.

Peter Fuller Young, Miller, Eggleston & Cramer, Ltd., Burlington, VT, Jan A. Brody, Charles Carella, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Roseland, NJ, for Leslie Harwood, Craig Harwood.

Shapleigh Smith, Jr., Dinse, Knapp & McAndrew, P.C., Burlington, VT, Craig S. Nolan, Sargent & Nolan, LLP, Morrisville, VT, for Eugene L. Samson.

## MEMORANDUM OPINION AND ORDER

SESSIONS, District Judge.

In this motion for specific enforcement of the final order and judgment approving a settlement agreement reached in the above-captioned class action, Defendant National Life Insurance Company of Vermont ("National Life") seeks to enjoin the prosecution of a complaint filed in California state court by the Estate of Charlotte Zitnick ("Estate") through its executor Eugene L. Samson. As grounds for its motion, National Life asserts that the Estate is a member of the class certified in this class action, that the claims asserted in the California complaint were released by the final order and judgment issued by this Court, and that the final order and judgment forbids the prosecution of any lawsuit in any jurisdiction based on claims released in the class action.

The Estate responds[1] first that this Court lacks personal jurisdiction over it because the Estate's decedent was not a class member and National Life cannot demonstrate the required minimum contacts between the forum and the Estate. Second, the Estate contends that applying the release against it would deny it due process, because National Life cannot demonstrate that the Estate's decedent received notice, and the language of the notice provided is insufficient as a matter of law to bar the Estate's claims. Third, the Estate claims that the Estate's decedent is not a member of the class, nor are the class action claims the same as or representative of those being litigated in the California complaint. Fourth, the Estate asserts that the scope of the class action release does not include the Estate's claims. Fifth, the Estate argues that National Life has no admissible evidence to show that the Estate is a class member, that the Estate's decedent was served with notice of the proposed settlement, or that the claims at issue in the California litigation were included in the released claims under the terms and conditions of this Court's final judgment and order.

### Factual Background

The following facts are essentially undisputed. Prior to 1990, SUR–VACC Packing Company ("SUR–VACC"), a business owned by Charlotte Zitnick, owned two Connecticut Mutual life insurance policies that insured Zitnick's life in the amount of $450,000. SUR–VACC was the beneficiary of the policies.

In 1990, Vermont Life Insurance Company ("Vermont Life")[2] representative Kenneth Winthrop recommended to Zitnick that she terminate the Connecticut policies, and transfer their cash value to Vermont Life to purchase a new policy

---

**1.** The Estate has requested oral argument on this motion. Doc. 133. The Court finds that the parties have thoroughly briefed the issues presented, and declines to grant the request, pursuant to LR 7.1(a)(7).

**2.** Vermont Life was a wholly-owned subsidiary of National Life. It merged with National Life in 1993. Pettery Aff. at 2 (Doc. 124, Ex. C).

with a $700,000 face value. The policy was intended to provide tax-free death benefits to the beneficiaries of the policy. Zitnick purchased the Vermont Life policy on behalf of SUR–VACC, and shortly thereafter transferred ownership of the policy to herself individually, naming her children as beneficiaries.

Zitnick died on April 8, 2000. National Life paid the death benefit due under the policy; however the Estate was required to pay taxes on the benefit. Estate taxes allegedly could have been avoided had Zitnick transferred ownership of the policy to an irrevocable insurance trust instead of to herself.

On May 11, 2001, the Estate filed a complaint for damages in the California Superior Court, alleging negligence against Zitnick's accountants and financial advisors, and negligence and negligent misrepresentation against Winthrop and Vermont Life. That action is stayed, pending the outcome of this motion. *See Samson v. London,* No. BC250310 (Cal.Super.Ct. Dec. 12, 2001) (order staying case as to Defendant National Life and Vermont Life).

The class action against National Life sought relief for allegedly unlawful practices relating to the sale of whole and universal life insurance policies. The suit claimed that National Life sought to induce the purchase of life insurance policies by misrepresentations and material omissions contained in policy illustrations, sales presentations and other marketing materials, directly and through its nationwide sales force. Specifically, the complaint alleged that the misrepresentations involved (1) the number of cash premium payments that a policyholder would have to make; (2) the cash value and other benefits that a policyholder would realize; (3) interest rate and cash value projections; and (4) financing the purchase of new policies by

stripping the value from existing policies and using the proceeds to purchase new policies from National Life, a sales tactic known as "churning." Am. Consolidated Compl.—Class Action (Doc. 127, Ex. D).

The Notice of Proposed Settlement of the class action described the lawsuit as involving, *inter alia,* "[m]isrepresentations concerning the replacement of an existing policy by surrendering (or borrowing or withdrawing cash value from) an existing policy (issued by either National Life or another company) in order to purchase a new National Life Policy." Doc. 134, Ex. C at 6. In the Notice, policyowners were advised that they must request exclusion from the class or to file written objections to the proposed settlement by September 18, 1998, and that they had a right to appear at a fairness hearing scheduled for October 19, 1998 in order to make their objections in person or through an attorney. The notice included an appendix A describing the relief that would be offered the class members remaining in the class, and an appendix B setting forth the release and waiver that class members remaining in the class would provide to National Life. *Id.* at 8–15.

The Release defined "Policies" as "all whole life, universal life, or variable life insurance policies issued by the Company during the period from January 1, 1982, through December 31, 1997, including any paid-up additions or other riders or amendments to such policies, but not including any such policies with respect to which the owner has timely requested exclusion from the Class." *Id.* at 13. It defined "Released Transactions" as

the marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, performance, retention, administration, servicing or replacement (by means of surrender, partial surrender, loans respecting, withdrawal of val-

ues and/or termination of any life insurance policy) of (a) the Policies or (b) any policy, annuity or mutual fund issued by the Releasees or by another company and terminated or sold in connection with or relating in any way directly or indirectly to the sale of the Policies.

*Id.*

The Release discharged National Life, its subsidiaries, affiliates, agents and predecessors from liability for claims of any kind "that have been, could have been, may be or could be alleged or asserted now or in the future" by any class members, their successors and assigns, attorneys, heirs, administrators or executors, on the basis of, connected with, arising out of, or related to, in whole or in part, the Policies, the Released Transactions and servicing related to the Released Transactions or Policies, including without limitation ... representations relating to ... the nature, characteristics, terms, descriptions, operation or relative appropriateness or suitability, of the Policies; ... the use of an existing policy's or annuity's or mutual fund's dividend's or cash value or surrender value or other values by means of a surrender, withdrawal/partial surrender or loan to purchase or maintain a new Policy or other life insurance policy; the replacement or rollover of an existing life insurance policy or Policy with or into a new life insurance policy or Policy; [and/or] violators of the "twisting" or "churning" or replacement statutes or regulations under applicable state law.

*Id.* at 14–15.

The Court's Final Order and Judgment defined the class members as

all persons and entities who at any time up through and including June 9, 1998 had an ownership interest in one or more whole life, universal life, or variable (including variable universal) life insurance policies issued in the United States by National Life (or its predecessors or affiliates) during the period January 1, 1982, through December 31, 1997.

Doc. 124, Ex. A at 3.

Pursuant to the terms of the class action settlement, National Life increased the value of the Zitnick policy. On or before May 2, 2000 National Life paid the $700,000 death benefit, plus the special augmentation authorized by the settlement, and interest from the date of death to Zitnick's beneficiaries.

### Discussion

#### I. *Personal Jurisdiction*

Due process entitles absent class action plaintiffs to certain protections from the jurisdiction of a forum. *Phillips Petroleum v. Shutts,* 472 U.S. 797, 811, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). An absent class action plaintiff who lacks the minimum contacts with the forum that would ordinarily support personal jurisdiction is afforded procedural due process by receiving "notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel." *Id.,* 472 U.S. at 812, 105 S.Ct. 2965. "The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). *See also* Fed.R.Civ.P. 23(c)(2). The notice must describe the action and the plaintiffs' rights. *Phillips Petroleum,* 472 U.S. at 812, 105 S.Ct. 2965. Due process requires that an absent class action plaintiff be permitted to "opt out" of the suit, and that the named plaintiffs adequately represent

the interests of the absent class members. *Id.*

The Estate does not argue that the named plaintiffs did not adequately represent the interests of absent class members. Therefore, this forum lacked personal jurisdiction over Zitnick only if she was not a member of the class or did not receive constitutionally adequate notice and an opportunity to be heard. These issues are discussed below.

## II. *Due Process Requirements*

■ Individual notice of a class action must be provided to all members of the class who can be identified through reasonable effort. Fed.R.Civ.P. 23(c)(2). National Life has produced the affidavit of Kimberly K. Ness, senior project administrator for Rust Consulting, Inc. ("Rust Consulting"), the firm that acted as administrator for the settlement of this class action. Ness Aff. (Doc. 127, Ex. B). Ness states that she supervised the notification of class members, both the "Notice of Class Action and Notice of Proposed Settlement" ("First Notice") and the "Notice of Approval of Settlement and Opportunity to Elect Relief and Benefits" ("Second Notice"). Class members were notified by first-class mail, postage prepaid. National Life provided Rust Consulting with a database containing the names and addresses of class members, including the names of Charlotte Zitnick and SUR–VACC Packing Company, both with the same apartment address, which was the address that Zitnick provided on her application for the insurance policy. *See* Doc. 134, Ex. A.2. First and Second Notices were mailed to both entities at that address. None of the notices were returned as undeliverable.

■ The Estate does not contend that neither Zitnick nor SUR–VACC received notice: it contends that National Life cannot prove that they received notice. An alleged failure to receive notice will not sustain a due process challenge as long as reasonable measures were taken to provide individualized notice to identifiable class members. *See Peters v. Nat'l R.R. Passenger Corp.,* 966 F.2d 1483, 1486 (D.C.Cir.1992) (due process clause does not guarantee notice to class member). *See also Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (proper inquiry is not whether class member received notice but whether method of providing notice was reasonably calculated to provide notice). The method employed by National Life satisfied due process in this case.

■ The Estate also argues that the language of the notice provided was insufficient to put Zitnick on notice that she might have a claim against National Life. The First Notice from National Life contained a "Statement of Eligibility" which read: "According to our records, you are a member of a class of policyowners on whose behalf a lawsuit has been brought against the National Life Insurance Company." Below this information, the Statement listed the policy number and name of. the insured. Doc. 134, Ex. C at 2.

Following the Statement of Eligibility, a letter from National Life's Chairman and Chief Executive Officer to the policyowner stated:

> I am writing about benefits you may be eligible to receive as part of a proposed settlement of a class action lawsuit which has been filed against National Life. You are receiving this information because, according to our records, you have or had an ownership interest in one or more whole life, universal life, or variable (including variable universal) life insurance policies issued in the United States by National Life (or its predecessors or affiliates) during the period

January 1, 1982, up through and including December 31, 1997 and, as such, are a member of a class of current and former National Life policyowners eligible to participate in a proposed settlement.

*Id.* at 3.

In a section entitled "Nature of Lawsuit and the Settlement Process," the First Notice explains: "The lawsuit alleged that National Life made certain misrepresentations in connection with the sale of whole life, universal life, and variable life insurance policies. The alleged misrepresentations include: ... [m]isrepresentations concerning the replacement of an existing policy by surrendering (or borrowing or withdrawing cash value from) an existing policy (issued by either National Life or another company) in order to purchase a new National Life Policy." *Id.* at 6.

Finally, in a section entitled "Question and Answer Brochure: General Questions about the Settlement," the recipient of the notice is informed that she may be eligible for benefits under the proposed settlement, that the claims include misrepresentations connected with "the replacement of existing life insurance policies with new life insurance policies," and that if she remains in the class she will not be able to maintain a lawsuit against National Life that pertains to her policy. *Id.* at 17–18.

■ Due process requires that a class action notice contain sufficient information "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum,* 472 U.S. at 812, 105 S.Ct. 2965 (quoting *Mullane,* 339 U.S. at 314–15, 70 S.Ct. 652). The notice must describe the action and the plaintiffs' rights, particularly the right to "opt out" of the class. *Id.* These essentials were met by the notice provided. Anyone who had purchased life insurance from National Life within the relevant time period using the cash value from an existing policy or policies was on notice of the pendency of a lawsuit involving misrepresentations connected to the transaction.

The Estate's complaint is that National Life and its agent made misrepresentations in connection with the purchase of a National Life policy using the cash value of two life insurance policies from another company, specifically that the new National Life policy would yield a non-taxable death benefit. National Life's First Notice satisfied the due process requirement of putting Zitnick on notice that claims like those subsequently asserted by the Estate were being litigated in the class action, and would be extinguished by the settlement and release.

## III. *Res Judicata*

■ The rule of res judicata "provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " *Anaconda–Ericsson Inc. v. Hessen (In re Teltronics Servs., Inc.),* 762 F.2d 185, 190 (2d Cir.1985) (quoting *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876)). Res judicata "applies 'if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.' " *Stephenson v. Dow Chem. Co.,* 273 F.3d 249, 259 (2d Cir.2001) (quoting *Anaconda–Ericsson,* 762 F.2d at 190). The Estate's challenge is to elements three and four.

The Final Order and Judgment in this case describes the class as "all persons or entities who ... had an ownership interest in one or more whole life, universal life or variable (including variable universal) life insurance policies." Doc. 124, Ex. A at 3. The Estate argues that Zitnick was not a member of the class because her National Life policy was denominated a "Flexible Premium Adjustable Benefit Life Insurance" policy, and was not specifically mentioned in the definition of the class.

Universal life insurance policies feature flexible premiums and adjustable death benefits. *See, e.g.,* Kyle D. Logue, *The Current Life Insurance Crisis,* 32 Cumb. L.Rev. 1, 67 (2001–02). According to the affidavit of National Life's Policy Forms Director, "it is customary in the life insurance industry for universal life policies to be described as flexible premium, adjustable benefit life insurance policies." Law Aff. at ¶ 5 (Doc. 127, Ex. C). Zitnick owned a National Life universal life insurance policy known as "Paragon," with flexible premiums and adjustable benefits, within the relevant time period. *See* Doc. 134, Ex. A.2; Doc. 127, Ex. C. She was, accordingly, a member of the class certified in this case.[3] The third element of the doctrine of res judicata is therefore satisfied.

The Estate also argues that the class action claims are not the same as or representative of those being litigated by the Estate in California. A judgment in a class action will be binding not only on named plaintiffs but on members of the class who are not formal parties to the suit. *See Cooper v. Fed. Reserve Bank of Richmond,* 467 U.S. 867, 874, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984); *Hansberry v.*

*Lee,* 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940). The terms of settlement of a class action may even bind class members whose claims have not yet ripened at the time the judgment is entered. *See In re Agent Orange Prod. Liab. Litig.,* 996 F.2d 1425, 1437–38 (2d Cir.1993).

The amended consolidated class action complaint alleged among other claims that National Life employed a sales scheme known as "churning," financing the purchase of new policies by stripping the cash value from existing policies, and thereby generating large commissions and other fees. It asserted that the new policies were not as National Life represented, and did not provide the benefits promised by National Life. Am. Consolidated Compl. at ¶¶ 5–9 (Doc. 127, Ex. D). The California action alleges that National Life and its agent recommended to Zitnick that she terminate the Connecticut Mutual policies and transfer their value to Vermont Life to purchase a new policy, and in connection with their sales pitch made misrepresentations to her concerning the new policy's ability to provide tax-free death benefits. The class action allegations include and are representative of the allegations of the California complaint; the fourth element of the doctrine of res judicata is satisfied.

### IV. *Scope of the Release*

The Estate asserts that the scope of the class action release does not embrace the Estate's claims in the California complaint. The settlement agreement was intended to have preclusive effect on future lawsuits that are encompassed by the Release. *See* Final Order & J. at 5–6 (Doc. 124, Ex. A). The Release extin-

---

**3.** The Court notes that two of the named plaintiffs in the class action suit, Roger F. Glaser, Jr. and Darwyn F. Kelley, alleged that they purchased flexible premium adjustable

benefit life insurance policies as a result of the unlawful conduct alleged in the amended consolidated complaint. *See* Am. Consolidated Compl. at ¶¶ 12, 15 (Doc. 127, Ex. D).

guishes "any and all causes of action, claims" and the like,

> that have been, could have been, may be or could be alleged or asserted now or in the future ... on the basis of, connected with, arising out of, or related to, in whole or in part, the Policies ... including without limitation ... representations relating to ... the nature, characteristics, terms, descriptions, operation or relative appropriateness or suitability, of the [National Life] Policies; ... [and/or] the use of an existing policy's ... cash value or cash surrender value ... to purchase ... a new [National Life] Policy or other life insurance policy."

*Id.* at 11–12. The language of the release comprehensively extinguishes the Estate's claims against National Life.

## V. *Lack of Admissible Evidence*

As discussed above, National Life has admissible evidence to demonstrate that Zitnick was a class member, that notice to her comported with due process, and that the claims against Vermont Life at issue in the California action were included in the released claims as set forth in this Court's final judgment and order.

### *Conclusion and Order*

For the reasons stated above, National Life's Motion to Specifically Enforce This Court's Final Order and Judgment and Permanent Injunction Against the Estate of Charlotte Zitnick (Doc. 123) is **GRANTED**. Charlotte Zitnick is a member of the Class certified and bound to the Final Order and Judgment entered in the above-captioned action. The claims asserted against Vermont Life in the California complaint are barred and released by the Final Order and Judgment. The Estate is **ENJOINED** from violating the Final Order and Judgment, including the prosecu-

tion of *Samson v. London,* No. BC250810 (Cal.Super. Ct. filed May 11, 2001) against defendant Vermont Life. The Estate's Request for Oral Argument (Doc. 133) is **DENIED**.