Lucie Juneau PATROWICZ, Executrix
of the Estate of Gertrude
Philibert, Plaintiff,

v.

TRANSAMERICA HOMEFIRST, INC.,
Financial Freedom Senior Funding
Corporation, Metropolitan Life Insur-
ance Company, Defendants.

No. 3:04CV1362 (MRK).

United States District Court,
D. Connecticut.

March 2, 2005.

Leo Gold, Benjamin & Gold, Stamford, CT, for Plaintiff.

Andrew D. Moore, McCarter & English, Erin O'Brien Choquette, Theodore J. Tucci, Robinson & Cole, Hartford, CT, James H. Fleming, Fleming & Phillips, LLP, Walnut Creek, CA, Louis K. Fisher, Jones Day, Washington, DC, Lynne P. Mallya, Jones Day, Los Angeles, CA, for Defendants.

### *MEMORANDUM OF DECISION*

KRAVITZ, District Judge.

This lawsuit arises out of a "reverse mortgage" between Defendant Transamerica HomeFirst, Inc. ("HomeFirst"), the predecessor in interest to Defendant Financial Freedom Senior Funding Corporation ("Financial Freedom"), and Gertrude Philibert dated July 29, 1996. Under a reverse mortgage, a borrower typically receives an initial lump sum and subsequent monthly payments secured by the equity in his or her residence, and the borrower is not required to repay any principal or interest until the occurrence of a defined maturity event such as the sale of the residence or death of the borrower. The particular reverse mortgage in this case also included a deferred annuity feature, which was provided by Defendant Metropolitan Life Insurance company ("MetLife").

In her Complaint, the Executrix of Ms. Philibert's Estate (Ms. Philibert died in 2003) alleges that the terms of Ms. Philibert's reverse mortgage were unconscionable and oppressive and imposed excessive fees and charges, including, in particular, contingent interest equal to 50% of the appreciated value of her property, maturity fees of 2% of the sales price of the home, non-contingent interest of 9.950% per year and a premium for a deferred annuity that did not begin unless and until Ms. Philibert lived to beyond age 88 (she died at 87). *See* Complaint at First Count ¶ 16, Third Count ¶ 30, attached as Ex. A to Notice of Removal [doc. # 1]. The Complaint also asserts that Defendants sought to enrich themselves at the expense of their elderly customers by concealing material terms in the loan documents and inducing Ms. Philibert to sign the reverse mortgage through false or misleading representations. *See id.* at Second Count ¶¶ 18–27. Finally, the Complaint charges that Defendant Financial Freedom failed to deliver a proper release of mortgage when the reverse mortgage was paid off in 2004 and it imposed a reconveyance preparation fee of $65.00 that was not authorized by the loan documents. *See id.* at Third Count ¶ 32; Fourth Count ¶ 2. The Complaint alleges four causes of action: (1) breach of the covenant of good faith and fair dealing; (2) intentional misrepresentation; (3) violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a *et seq.;* and (4) a violation of Connecticut's mortgage release statute, Conn. Gen.Stat. § 49–8. *See generally* Complaint attached as Ex. A to Notice of Removal [doc. # 1].

Presently pending before the Court are motions to dismiss by Defendants Financial Freedom and HomeFirst [doc. # 22] and Defendant MetLife [doc. # 28]. Both motions are principally based on grounds

of *res judicata* and release, stemming from the fact that Ms. Philibert was a member of a class action that was settled by way of a final judgment entered by the Superior Court of San Mateo County, California in *In re Reverse Mortgage Cases,* No. 4061 (Cal. Sup.Ct. June 16, 2003), *aff'd,* 2004 WL 602643 (Cal.Ct.App. Mar. 26, 2004), *review denied,* (Cal. July 21, 2004). For the reasons stated below, the Court GRANTS MetLife's Motion to Dismiss [doc. # 28] and GRANTS IN PART and DENIES IN PART Financial Freedom's and HomeFirst's Motion to Dismiss [doc. # 22].

## I.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the *Federal Rules of Civil Procedure,* the Court should "construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true." *Todd v. Exxon Corp.,* 275 F.3d 191, 197 (2d Cir.2001). "A complaint should not be dismissed for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* at 197–98 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## A.

■ The defense of *res judicata* or release may be raised on a Rule 12(b)(6) motion to dismiss if "all relevant facts are shown by the court's own records." *Am-Base Corp. v. City Investing Co. Liquidating Trust,* 326 F.3d 63, 72 (2d Cir.2003) (affirming dismissal of complaint on *res*

*judicata* grounds); *see, e.g., Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 114 (2d Cir.2000); *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 86 (2d Cir.2000); *Hackett v. Storey,* No. 3:03CV395 (JBA), 2003 WL 23100328 (D.Conn. Dec. 30, 2003). Moreover, in ruling on a motion to dismiss, a court is not limited to the factual allegations of the complaint but may consider "documents attached to the complaint as exhibits or incorporated in it by reference, to matters of which judicial notice may be taken or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993). Therefore, in considering a *res judicata* defense, a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court. *See, e.g., Ambase,* 326 F.3d at 72–73; *Hackett,* 2003 WL 23100328, at *2.

Here, Financial Freedom asks the Court pursuant to Rule 201 of the *Federal Rules of Evidence* to take judicial notice of the following pleadings from the *Reverse Mortgage Cases:* (1) the Third Consolidated Amended Complaint (the "Consolidated Complaint"); (2) the Order Certifying a Settlement Class and Approving Class Notice (the "Certification Order"); (3) the Judgment on Final Approval of Class Settlement (the "Final Judgment"); (4) the decision of the California Court of Appeal affirming the final Judgment; and (5) the California Supreme Court's decision to deny a petition for review of the Court of Appeal's decision.[1] *See* Req. for Jud. Not.

1. Financial Freedom also asks this Court to take judicial notice of a decision of the United States District Court for the District of New Jersey in *Huff v. Financial Freedom Senior Funding Corp.,* Civil Action No. 03–6226(MLC) (Ex. F attached to the Request for

Judicial Notice [doc. # 26] ), but the Court sees no need to do so or to treat the decision in *Huff* any differently from any other unpublished decision that this Court may chose to rely on in its opinion. *See, e.g.,* App. of Unpublished Decisions in Support of Mot. to

in Support of Mot. to Dismiss of Def. Financial Freedom Sr. Funding Corp. ("Req. for Jud. Not.") [doc. # 26]. Because the requirements of Rule 201 are met, the Court will grant Financial Freedom's request and take judicial notice of the foregoing pleadings.

## B.

The pleadings reveal that the Defendants in this case were also sued regarding their reverse mortgage practices in the *Reverse Mortgage Cases.* The Consolidated Complaint in the *Reverse Mortgage Cases,* which was brought as a class action "to rectify financial abuse of the elderly," alleged that the Defendants had "issued 'reverse mortgages' to capitalize upon the pressing need of the elderly for liquid funds in their old age." *See* Consolidated Complaint ¶ 1, attached as Ex. A to Req. for Jud. Not. [doc. # 26]. In particular, the Consolidated Complaint asserted—in language reminiscent of Plaintiff's Complaint in this case—that Defendants concealed the "high costs and excessive charges" associated with the class members' reverse mortgages, that the terms and fees of the mortgages (including contingent interest, annuity charges, maturity fees) were "unfair," "excessive" and "oppressive," that the "combined effect of all charges was not properly disclosed and made the product as a whole unfair," and that Defendants engaged in a "practice of deception" and made representations about the reverse mortgages that were "false and misleading." *See, e.g., id.* at ¶¶ 1, 38, 41, 44, 47, 56, 73.

After four and one-half years of litigation, the San Mateo Superior Court preliminarily approved a class settlement in the *Reverse Mortgage Cases,* certified a nationwide settlement class (the "Class"), approved notice to the members of the class in preparation for a fairness hearing on the settlement, and specified the procedures for opting out of the Class or objecting to the proposed settlement. *See* Certification Order, attached as Ex. B to Req. for Jud. Not. [doc. # 26].

The Certification Order defined the Class as follows:

1.   Individuals who at any time prior to January 1, 1999 entered into a reverse mortgage loan with Transamerica HomeFirst, Inc. which charges the following fees: (1) "Contingent Interest" of 50% of the appreciation in value of the borrower's property between the date the loan was made and the date it became or becomes due; and (2) a premium for a deferred annuity acquired as part of the loan; and/or (3) a "Maturity Fee" of 2% of the value of the property as the loan's maturity . . . .

2.   Legal successors-in-interest (such as conservators, executors, administrators, or guardians) of any borrower described in paragraph 1, above; and

3.   Heirs of any borrower described in paragraph 1, above, who has died and does not have a legal successor-in-interest as defined in paragraph 2, above.

*See id.* at *4. It is apparent from the face of the Complaint in this case—and Plaintiff does not deny it—that the Class approved by the San Mateo Superior Court included Ms. Philibert.

The Settlement Agreement and Release are attached to the Certification Order. Under the terms of the Release, members of the Class (and their heirs and successors in interest, among others) release and

---

Dismiss [doc. # 24]. The Court also sees no need to take judicial notice of certain facts related to Financial Freedom, as set forth in

¶ 7 of Financial Freedom's Request for Judicial Notice [doc. # 26].

discharge each of the Defendants and their affiliates (among others) from:

> any and all causes of action, claims, rights, damages ... of any kind arising now or in the future out of or in connection with or related to the facts and claims alleged or asserted in any of the complaints filed in the Litigation ... whether presently known or unknown, asserted or unasserted, that any of the Releasing Persons under federal law or the law of any state or locality, including consumer protection laws.

Release at 19–20, ¶ IX.A, attached to Certification Order, attached as Ex. B to Req. for Jud. Not. [doc. # 26]. The released claims are expressly described as any claims regarding the marketing of reverse mortgages or any claims that the reverse mortgages were deceptively or fraudulently marketed, that any of the Defendants concealed or failed to disclose any terms of the reverse mortgages, and that any of the terms of the mortgages were unfair or unlawful. *See id.*

On June 16, 2003, the San Mateo court approved the terms of the proposed settlement. *See* Final Judgment, attached as Ex. C to Req. for Jud. Not. [doc. # 26]. Among the settlement's "essential terms" were the creation of a fund for the benefit of the Class totaling $8 million in return for "dismissal with prejudice of the Action and a release of all claims which Class members might have arising out of the terms or marketing of the subject reverse mortgage loans and/or associated annuity, including claims which are related to the facts and claims alleged in any of the complaints." *See id.* at ¶ 10(a). The order provided that "[u]pon entry of the Final Order and Judgment, plaintiffs and the Class (excluding those who opted out) shall release, and be permanently barred from asserting, their claims against Defendants (as defined in the Settlement Agreement)."

*Id.* at ¶ 10(g). The Final Judgment included a permanent injunction enjoining Class members from "filing, commencing, prosecuting ... (as class members or otherwise) any lawsuit or other proceeding, including arbitration, in any jurisdiction based on or relating to the claims and causes of action, or the facts or circumstances relating thereto, in this Action that have been released through the settlement herein ..." *Id.* at ¶ 19. The San Mateo court retained jurisdiction to implement the terms of the settlement, including the permanent injunction.

The Final Judgment also expressly made findings regarding the adequacy of notice to the Class. Under California law, notice to class members " 'must contain an explanation of the proposed settlement and procedures for class members to follow in filing written objections to it an in arranging to appear at the settlement hearing and state any objections to the proposed settlement.' " *In re Reverse Mortgage Cases*, 2004 WL 602643, at *3 (quoting Cal. Rules of Court § 1859(f)). The San Mateo court concluded that both an original and supplemental notice as well as notice via publication in *USA Today* were "the best practicable notice and w[ere] reasonably calculated, under the circumstances" to provide the Class with notice of the terms of the settlement and their rights and that the notice complied with all applicable requirements of law, including the Due Process Clause of the Constitution. *See id.* at ¶ 12. The Final Judgment listed by name the eighteen Class members who had opted out of the Class. It is undisputed that Ms. Philibert was not among them. *See id.* at ¶ 13.

Finally, the Final Judgment made findings that the named Plaintiffs had "adequately represented" the Class members "located in ... Connecticut ..." *Id.* at ¶ 16. The Court also found that the Class

had been represented by capable and experienced Class counsel and that the settlement was a fair and reasonable resolution of the dispute that was in the best interests of the Class. *See id.*

Two individuals who had objected to the settlement appealed the Final Judgment to the California Court of Appeal, which affirmed the trial court's decision. *See In re Reverse Mortgage Cases,* 2004 WL 602643 (Cal.Ct.App. Mar. 26, 2004). In particular, after thoroughly discussing the appellants' objections to the fairness of the settlement and to the adequacy of notice to class members, the appellate court concluded that the trial court did not abuse its discretion in finding that the settlement was "fair and reasonable" and that notice to the Class was reasonable and the best practicable notice in the circumstances. *See id.* at *3–7. On July 21, 2004, the California Supreme Court denied a Petition for Review in the *Reverse Mortgage Cases,* and thereupon, the judgment of settlement and release became final. *See* Order of the California Supreme Court, *In re Reverse Mortgage Cases,* attached as Ex. E to Req. for Jud. Not. [doc. # 26].

## II.

■ The Full Faith and Credit Act requires that the "judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. The Act thus

directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state. Federal courts may not "employ their own rules ... in determining the effect of state judgments," but must "accept the rules chosen by the

State from which the judgment is taken."

*Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 373, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) (quoting *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)); *see Migra v. Warren City Sch. Dist.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgment emerged would do so.") (internal quotations and citations omitted); *AmBase,* 326 F.3d at 72 ("Where there is a final state court judgment, a federal court looks to that state's rules of *res judicata* to determine the preclusive effect of that judgment."). That a judgment is the result of a class action, rather than a suit brought by an individual, does not "undermine the initial applicability of § 1738." *Matsushita,* 516 U.S. at 373–74, 116 S.Ct. 873. "Therefore, a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of the [Full Faith and Credit] Act." *Id.* at 374, 116 S.Ct. 873.

■ In California, *res judicata* is a well-established doctrine. A valid final judgment on the merits in favor of a defendant serves as a complete bar to further litigation on the same cause of action. The doctrine is also expressed statutorily in Code of Civil Procedure section 1908. *Res judicata* gives conclusive effect to a previous judgment in subsequent litigation on the same controversy.

*Castro v. Higaki,* 31 Cal.App.4th 350, 357, 37 Cal.Rptr.2d 84 (1994) (internal quotations, citations, and footnote omitted); *see, e.g., Fed'n of Hillside and Canyon Ass'ns v. City of Los Angeles,* 126 Cal.App.4th

1180, 1204, 24 Cal.Rptr.3d 543, 559 (2004) ("Code of Civil Procedure section 1908, a codification of the *res judicata* doctrine, states that a judgment or final order in an action or special proceeding is conclusive as to the matter directly adjudged.") (internal quotations and citations omitted); *Johnson v. American Airlines, Inc.,* 157 Cal.App.3d 427, 430, 203 Cal.Rptr. 638 (1984) ("The doctrine of *res judicata* codified in [California] Code of Civil Procedure sections 1908, 1908.5, 1909, 1910 and 1911, gives conclusive effect to an earlier judgment in subsequent litigation involving the same controversy."). "Under the doctrine of *res judicata,* a valid, final judgment on the merits precludes parties or their privies from relitigating the same cause of action in a subsequent suit." *Le Parc Cmty. Ass'n v. Workers' Comp. Appeals Bd.,* 110 Cal.App.4th 1161, 1169, 2 Cal. Rptr.3d 408 (2003) (internal quotation omitted); *see also Storey v. Cello Holdings, LLC,* 347 F.3d 370, 380 (2d Cir.2003) ("A final judgment on the merits of an action precluded the parties or their privies from relitigating issues that were or could have been raised in that action.").

◼ Moreover, under California law, "a court-approved settlement pursuant to a final consent decree in a class action will operate to bar subsequent suits by class members." *Johnson,* 157 Cal.App.3d at 431, 203 Cal.Rptr. 638. In other words, *res judicata* applies when "the remedies sought [in subsequent suits] are the same as those secured in the class action settlement." *Id.* at 433, 203 Cal.Rptr. 638 (quoted in *Acuna v. Regents of Univ. of California,* 56 Cal.App.4th 639, 649, 65 Cal. Rptr.2d 388 (1997)); *see also Devlin v. Scardelletti,* 536 U.S. 1, 10, 122 S.Ct. 2005,

153 L.Ed.2d 27 (2002) ("nonnamed class members are parties to the proceedings in the sense of being bound by the settlement"); *Matsushita,* 516 U.S. at 373–74, 116 S.Ct. 873 (applying Delaware *res judicata* principles to bar member of settled class action from suing in federal court on federal claims).

Here, there is no dispute about the following: (1) that Ms. Philibert was a member of the Class and did not opt out of the Class; (2) that Defendants in this case were also defendants in the *Reverse Mortgage Cases;* and (3) that the subject matter of the *Reverse Mortgage Cases* was substantially identical to the claims Plaintiff asserts in this case. It appears, therefore, that all of the elements for *res judicata* are met and that, at least on its face, the Final Judgment would appear to bar Ms. Philibert's claims in this action. *See, e.g., Le Parc,* 110 Cal.App.4th at 1169, 2 Cal.Rptr.3d 408; *Castro,* 31 Cal.App.4th at 357, 37 Cal.Rptr.2d 84; *Johnson,* 157 Cal. App.3d at 431, 203 Cal.Rptr. 638.

Plaintiff nonetheless argues that her claims should not be barred by the Final Judgment in the *Reverse Mortgage Cases* for two reasons: (1) the notice she received was inadequate and did not comport with due process requirements, see Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss [doc. # 35], at 5–8; and (2) her claims in this action are not, or should not be, encompassed within the terms of the Final Judgment, see *id.* at 9–11.[2] The Court disagrees and will address each argument in turn.

**A.**

◼ Plaintiff does not contend that Ms. Philibert never received Class notice in the

---

**2.** Plaintiff makes no claim that the representation of absent class members in the *Reverse Mortgage Cases* by the named Class representatives or by Class counsel was inadequate. Nor does Plaintiff challenge the fairness or adequacy of the settlement in the *Reverse Mortgage Cases. See generally* Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss [doc. # 35], at 5–11.

*Reverse Mortgage Cases.* Instead, she argues that the notice to the Class failed to comply with the requirements of the Due Process Clause for two reasons. First, the notice did not contain an "opt out" form that Ms. Philibert could simply mail in to exclude herself from the Class. *See* Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss [doc. # 35], at 6–7. Second, notice was provided by regular mail instead of "special mail"—such as certified or registered mail—and regular mail was inadequate because Class members initially received an erroneous notice and elderly Class members, like Ms. Philibert, were likely confused by the multiple mailings. *See id.* at 5–6. In this latter regard, the California Court of Appeal recited the history of notice in the *Reverse Mortgage Cases* as follows:

> [O]n January 31, 2003, a notice was mailed to the class members, but the notice sent was actually an earlier draft and not the notice approved by the court. When plaintiffs discovered the mistake, they mailed a new notice to all class members on February 12, 2003, and then on March 4, 2003, obtained the trial court's ratifications of the mailing of the second notice.

*In re Reverse Mortgage Cases,* 2004 WL 602643, at *2. A supplementary notice was also made to the Class in the form of a summary class notice published in the national edition of *USA Today,* once a week for four consecutive weeks during January 2003. Final Judgment at ¶ 12, attached as Ex. C to Req. for Jud. Not. [doc. # 26].

In *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Supreme Court gave the follow-

ing description of the notice that the Due Process Clause requires before a forum state may bind an absent plaintiff:

> If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.... We think that the procedure followed by Kansas, where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to "opt out," satisfies due process.

*Id.* at 811–12, 105 S.Ct. 2965 (internal citations omitted).[3] Similarly, in *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir.2005), the Second Circuit recently held that the

> standard for the adequacy of a settlement notice in a class action under ei-

---

**3.** Under the Supreme Court's decision in *Shutts,* "a forum State [like California—] may exercise personal jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff [like Ms. Philibert—] may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant." *Shutts,* 472 U.S. at 811, 105 S.Ct. 2965.

ther the Due Process Clause or the Federal Rules is measured by reasonableness. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member.

*Id.* at 113–14 (internal quotations and citations omitted).

As stated above, in considering the adequacy of the notice to Class members in the *Reverse Mortgages Cases,* the California Superior Court used language that precisely tracks the due process principles set forth in both *Shutts* and *Wal–Mart Stores. See* Final Judgment at ¶ 12, attached as Ex. C to Req. for Jud. Not. [doc. # 26] ("[T]he Court finds that notice given ... was the best practicable notice and was reasonably calculated, under the circumstances, to advise ... Class members (1) of the pendency of this action and the nature of the claims being asserted herein, (2) of their recovery under the proposed settlement and their right to exclude themselves from the proposed settlement, (3) that any judgment, whether favorable or not, will include all class members who did not request exclusion ... and (5) that any Class member who does not request exclusion may object to the proposed settlement and, if he or she so desires, enter an appearance either personally or through counsel. In sum, the Court finds that the notice given was reasonable..."). The California Appellate Court affirmed the Superior Court's determination on appeal. *See In re Reverse Mortgage Cases,* 2004 WL 602643, at *3–5. The California Supreme Court declined review of the Appellate Court's decision. Nevertheless, Plaintiff wants this Court to engage in its own collateral review of the notice provided in the *Reverse Mortgage Cases,* regardless of the consistent rulings of the California courts that the notice satisfied due process.

This Court is well aware that federal district courts seldom review final determinations by state courts in civil litigation. *Cf. Bridgewater Operating Corp. v. Feldstein,* 346 F.3d 27, 29 (2d Cir.2003) ("The *Rooker–Feldman* doctrine provides that, because only the United States Supreme Court may review a final decision of a state court, federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by a state court."). Though the Second Circuit has not squarely addressed this issue, the Ninth Circuit, on remand from the Supreme Court's decision in *Matsushita Elec. Indus. Co. v. Epstein, supra,* has held that broad "collateral second-guessing" by a federal court of a state court's class action due process determinations is inappropriate and has limited any collateral review by a federal court to consideration of "whether the *procedures in the prior litigation* [in state court] afforded the party against whom the earlier judgment is asserted a 'full and fair opportunity' to litigate the claim or issue." *Epstein v. MCA, Inc.,* 179 F.3d 641, 648–49 (9th Cir.1999) (emphasis added) (quoting *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 480, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)). According to Judge O'Scannlain's opinion in *Epstein,* "the absent class members' due process right[s are] protected not by collateral review, but by the certifying court initially, and thereafter by appeal within the state system and by direct review in the United States Supreme Court." *Epstein,* 179 F.3d at 648; *see also Nottingham Partners v. Trans-*

*Lux Corp.,* 925 F.2d 29, 33 (1st Cir.1991) ("The Delaware courts, affording all the prophylaxis which the Due Process Clause commands, adjudicated the question of whether appellants had a right, or should have been allowed, to opt out of the settlement. If, having objected and been overruled, appellants were still dissatisfied with the Delaware judgment, their recourse was to the United States Supreme Court by means of certiorari, not to the lower federal courts in the vain pursuit of back-door relief.").

In *Stephenson v. Dow Chemical Co.,* 273 F.3d 249 (2d Cir.2001), *aff'd in part by an equally divided court and vacated in part,* 539 U.S. 111, 123 S.Ct. 2161, 156 L.Ed.2d 106 (2003), the Second Circuit acknowledged *Epstein,* without expressly approving of its holding. *Id.* at 258 n. 6 ("Without adopting the Ninth Circuit's decision in *Epstein,* we conclude that plaintiffs' collateral attack is proper even under its standard."). *Stephenson* held that absent class members could collaterally attack a judgment rendered in a class action settlement where there had been no prior determination that there was adequate representation of all class members in the settlement. *Id.* at 258; *see also Gonzales v. Cassidy,* 474 F.2d 67, 72 (5th Cir.1973) (allowing absent class member to collaterally attack adequacy of representation in an earlier class action).

Here, there is no challenge to the adequacy of representation of the Class in the *Reverse Mortgage Cases,* and unlike in *Stephenson,* there was a determination by the California courts that Class counsel had adequately represented the Class. Nor is there any claim in this case that the procedures employed by the California courts were unfair or that in deciding that notice to the Class was adequate, the California courts applied an incorrect legal standard or neglected to address relevant issues.

Instead, Plaintiff simply asks this Court to conduct its own independent examination of the adequacy of class notice and to decide that issue on its merits differently from both the California Superior Court and Court of Appeal.

It is not clear that such a collateral attack is available to Plaintiff. Under *Epstein,* of course, such review would be foreclosed. *Epstein,* 179 F.3d at 648–49 (Supreme Court precedent does not support broad collateral review of state court class action due process determinations; rather the extent of collateral review is limited to review of the "quality, extensiveness, or fairness of *procedures* followed in prior litigation" which may be satisfied by "referencing the [state] courts' findings on these matters, rather than by independently determining whether the requirements were met.") (emphasis in original) (internal quotation omitted) (citing *Matsushita,* 516 U.S. at 378–79, 116 S.Ct. 873; *Shutts,* 472 U.S. at 812, 819, 105 S.Ct. 2965; *Kremer,* 456 U.S. at 481, 482, 102 S.Ct. 1883; *Hansberry v. Lee,* 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). *See also Huff,* Civil Action No. 03–6226(MLC), at 4 (declining to second-guess the judgments of the California state courts that oversaw the class action and determined the fairness of the resulting settlement). But the Court is well aware that *Epstein* has been criticized. *See, e.g.,* 18A Charles Alan Wright, et al., *Federal Practice and Procedure: Jurisdiction 2d* § 4455, at 486 (2d ed.2002) (describing the *Epstein* position as reflecting "the deeper currents that are sweeping class litigation along towards uncertain destinations" and warning that *Epstein's* "new view . . . must confront many problems").

Furthermore, *Epstein* has not yet been adopted in the Second Circuit. *Stephenson* did not have occasion to decide whether the scope of collateral review is limited

to adequacy of representation (which is not raised in this case) or whether it would also extend to other issues such as the adequacy of notice (which is implicated in this case). *Stephenson*, 273 F.3d at 261 n. 8. However, broad language in the Second Circuit's decision suggests that collateral review might not be limited solely to adequacy of representation. Thus, the court stated:

> *Res judicata* generally applies to bind absent class members except where to do so would violated due process. Due process requires adequate representation "at all times" throughout the litigation, notice "reasonably calculated ... to apprise interested parties of the pendency of the action," and an opportunity to opt out.

*Id.* at 260 (quoting *Shutts*, 472 U.S. at 811–12, 105 S.Ct. 2965) (internal citations omitted).

Regardless how the Second Circuit ultimately resolves this issue, the Court concludes that it need not determine in this case the precise scope of collateral review available to absent class members. For even assuming *arguendo* that it would be proper for this Court to revisit the underlying substantive merits of the adequacy of notice in the *Reverse Mortgage Cases*, the Court would nonetheless conclude that the notice provided to absent Class members satisfied the requirements of the Due Process Clause, as outlined by the Supreme Court in *Shutts* and the Second Circuit in *Wal–Mart Stores*.

The notice to Class members apprised the recipient of the pendency of the *Reverse Mortgage Cases*, the terms and consequences of proposed settlement and the procedures for objecting to the settlement or opting out of the Class. *See generally* Notice, attached to Certification Order, attached as Ex. B to Req. for Jud. Not. [doc. # 26]. In particular, Class members were

told that the Release required as a part of the settlement would extend to the "disclosure or concealment of the [reverse mortgage] features [and] the marketing of the loan" and "would be effective even if facts come to light in the future as to the Released Claims that, had they been known at the time, would have materially affected the class member of representatives' willingness to enter into the settlement." *Id.* at 8. The notice also warned that

> the claims and potential claims which class members will be giving up in connection with this settlement extend beyond those asserted on behalf of the entire class of borrowers in the Action and include claims which may be relatively unique to that borrower or which arise under the laws of the borrower's home state. For that reason, in considering whether to object to the settlement or request exclusion form the class as discussed below, each class member should carefully consider whether, despite all the foregoing considerations, the settlement is in his or her best interests.

*Id.* at 6.

Contrary to Plaintiff's claim, due process did not require the court to include an opt out postcard or tear-off form in the notice to the Class. *See, e.g., In re Prudential Ins. Co. of America Sales Practices Litig.*, 962 F.Supp. 450, 531 (D.N.J.1997) (a specific opt-out form is not necessary, especially where "the Class Notice clearly describes the steps to opt out, which are extremely simple."); 3 Alba Conte & Herbert B. Newberg *Newberg on Class Actions* § 8.21, at 232 (4th ed.2002) ("courts have rejected the inclusion of opt-out forms with published and mailed combination notices"). In fact, some courts have held that including an opt-out postcard along with class notice would only cause confusion. *See, e.g., In re Domestic Air*

*Transp. Antitrust Litig.,* 141 F.R.D. 534, 553–54 (N.D.Ga.1992) (inclusion of opt-out form would confuse class members); *Roberts v. Heim,* 130 F.R.D. 416, 423 (N.D.Cal.1988) (observing that on balance "a separate form will engender confusion and encourage investors to unwittingly opt out of the class").

All that the Due Process Clause required is that absent Class members be informed of their right to opt out of the class and the procedures for doing so. Here, in a section that was captioned in bold-face type, **"What If I Do Not Wish To Participate In the Settlement"**, the notice clearly stated that recipients must request exclusion in writing by sending certain basic information to the settlement administrator, whose address was clearly noted. Notice at 10 (emphasis in original), attached to Certification Order, attached as Ex. B to Req. for Jud. Not. [doc. # 26]. In fact, eighteen members of the Class exercised their right to opt out, *In re Reverse Mortgage Cases,* 2004 WL 602643, at *2, thereby underscoring the fact that an opt out form was not required to provide Class members with adequate notice of their right to exclude themselves from the Class.

■ Finally, as *Shutts* itself makes clear, there is no due process requirement that notice to class members be sent by registered or certified mail, rather than regular mail. *See Shutts,* 472 U.S. at 812, 105 S.Ct. 2965 (notice "sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process"). *Cf.* Cal. Civ.Code § 1781(d) ("The party required to serve notice may, with the consent of the court, if personal notification is unreasonably expensive or it appears that all members of the class cannot be notified personally, give notice as prescribed herein by publication ... in a newspaper of general circulation in the county in which the transaction occurred."). *Shutts* adopted the following basic standard for class action notice: "the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts,* 472 U.S. at 812, 105 S.Ct. 2965. That is precisely the standard applied by the California courts. *See, e.g., In re Vitamin Cases,* 107 Cal.App.4th 820, 828, 132 Cal.Rptr.2d 425 (2003) ("The purpose of class notice in the context of a settlement is to give class members sufficient information to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement."). This Court agrees with the California Superior Court in the *Reverse Mortgage Cases* that the regular mail notice sent to Class members' last known address and publication in *USA Today* satisfied that standard. *See* Final Judgment at ¶ 12, attached as Ex. C to Req. for Jud. Not. [doc. # 26].

Accordingly, the Court concludes that Plaintiff's challenges to the adequacy of notice to Class members in the *Reverse Mortgage Cases* is not a proper basis for refusing to accord *res judicata* effect to the Final Judgment.

**B.**

■ Plaintiff also contends that the Final Judgment cannot bar her claims because some of the claims or theories she asserts in this case were not advanced in the *Reverse Mortgage Cases* and that in any event, a California court should not be able to prevent Connecticut citizens from bringing claims under Connecticut statutes, such as CUTPA. *See* Pl.'s Mem. Law in Opp'n to Mot. to Dismiss [doc. # 35], at 9–11. The Court disagrees.

■ First, the *res judicata* doctrine bars not only those claims or legal theories that were asserted in the prior action, but also those legal claims or theories that could have been asserted, regardless whether they were in fact raised by the parties, so long as they arise from the same transaction that formed the basis of the prior action. This "transactional view" of *res judicata* was recently explained by the Second Circuit in *AmBase* as follows:

> In earlier times the doctrine of *res judicata* could be invoked only to bar relitigation of the same cause of action already litigated and determined .... The modern transaction view of the doctrine of *res judicata*, however, does not require that the claim subsequently asserted be based on [the] same cause of action to be barred, but permits the doctrine to be invoked to bar litigation between the same parties if the claims in the later litigation arose from the same transaction that formed the basis of the prior adjudication.... Under the modern rule, ordinarily, a transaction gives rise to only one claim regardless of the number of ways that the claim may be asserted.

*AmBase*, 326 F.3d at 73 (internal quotation omitted); *see also Media Group, Inc. v. Tuppatsch*, 298 F.Supp.2d 235, 245 (D.Conn.2003) ("[Plaintiff] cannot escape the operation of the doctrine of *res judicata* by inventing new legal labels or theories to place upon the same cause of action that has already been adjudicated ...."). Though California's *res judicata* doctrine is based upon the "primary right theory" and not the "transactional view", *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 904, 123 Cal.Rptr.2d 432, 51 P.3d 297 (2002), the result is (as in this case) often the same. *Id.* at 909 n. 13, 123 Cal.Rptr.2d 432, 51 P.3d 297; *see also Hillside and Canyon Ass'ns*, 24 Cal.Rptr.3d 543, 558 ("[I]n defining the injury suffered, primary rights theory incorporates to some degree a transactional standard.").

Therefore, the Final Judgment in the *Reverse Mortgage Cases* bars any arguments, claims or legal theories regarding the marketing or terms of Ms. Philibert's reverse mortgage, regardless whether those claims or theories were actually advanced in the *Reverse Mortgage Cases*. *See, e.g., Hillside and Canyon Ass'ns*, 24 Cal.Rptr.3d 543, 557 ("*Res judicata* bars the litigation of not only issues that were actually litigated but also issues that could have been litigated.") (citing *Busick v. Workmen's Comp. Appeals Bd.*, 7 Cal.3d 967, 975, 104 Cal.Rptr. 42, 500 P.2d 1386 (1972)).

■ Second, it is well settled that a class action settlement can bar future claims by class members arising from the same transaction even if the claim involves a statute (like the Connecticut statutes relied on by Plaintiff) and even if the claim could not have been raised in the underlying litigation. As the Second Circuit held in *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2d Cir.1982),

> in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.

*Id.* at 460 (quoted with approval in *Matsushita*, 516 U.S. at 377, 116 S.Ct. 873); *see, e.g., Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 58–59 (1st Cir.2004) (same) (quoting *Matsushita*, 516 U.S. at 377, 116 S.Ct. 873); *Nottingham Partners*, 925 F.2d at 34 ("[A]s a matter of federal law, a state court can approve and enforce

a settlement which requires a party to release claims actually brought, or potentially 'bringable,' in federal court under 'exclusive jurisdiction' federal statutes even though the state court could not adjudicate claims arising under such statutes."); *Steinmetz v. Toyota Motor Credit Corp.*, 963 F.Supp. 1294, 1300 (E.D.N.Y. 1997) (final judgment and settlement in state court class action barred federal claims based upon same underlying transaction as involved in class action); *Huff*, Civil Action No. 03–6226(MLC), at *11–15 (settlement and associated release in the *Reverse Mortgages Cases* barred federal claims based on the same underlying transaction). *Cf. In re National Life Ins. Co.*, 247 F.Supp.2d 486, 494–95 (D.Vt.2002) (scope of class action release from class action settlement in Vermont federal court had "preclusive effect on future lawsuits that are encompassed by the Release," and the "language of the release comprehensively extinguishes" claims brought in California state court).

Here, the language of the Final Judgment permanently enjoined all Class members from bringing any lawsuit or arbitration "based on or relating to" the claims or causes of action in the underlying suit. *See* Final Judgment at ¶ 19, attached as Ex. C to Req. for Jud. Not. [doc. # 26]. The Final Judgment also approved the terms of the Release, which, as warned in the notice to Class members, broadly released any and all claims "in connection with or related to the facts and claims" asserted in the *reverse Mortgage Cases*, whether "asserted or unasserted," which any Releasing Person may have "under federal law *or the law of any state* or locality, including consumer protection laws." *Id.* (emphasis added). *See also* Settlement and Release at 19–20, ¶ IX.A,

attached to Certification Order, attached as Ex. B to Req. for Jud. Not. [doc. # 26].

In sum, with the exception of two claims that will be discussed below, the Court concludes that the Final Judgment and Release bar all of Plaintiff's claims because they are based on or relate to the transactions and conduct that was the subject of the *Reverse Mortgage Cases*. *See, e.g., Tropp v. Western–Southern Life Ins. Co.*, 381 F.3d 591, 596 (7th Cir.2004) ("[A] release incorporated into an order approving a class action settlement bars subsequent litigation based on the released claims."); *see also Nottingham Partners*, 925 F.2d at 34; *In re Nat'l Life Ins. Co.*, 247 F.Supp.2d at 494–95.[4] Accordingly, all but two of the claims asserted by Plaintiff in this action are barred by the doctrine of *res judicata*.

**III.**

■■■ The Court concludes that the following two claims against Defendant Financial Freedom are not barred by *res judicata*: (1) Plaintiff's claim that the amount Ms. Philibert was required to pay to pay off her loan in February 2, 2004 included a charge of $65.00 for a reconveyance preparation fee that was unauthorized by the mortgage agreement in violation of Connecticut's Creditors' Collection Act, Conn. Gen.Stat. § 36a–645 to –647, and CUTPA (Complaint, Third Count ¶ 32, attached as Ex. A to Notice of Removal [doc. # 1]); and (2) Plaintiff's claim that despite paying off the loan in 2004, Financial Freedom failed to deliver a release of mortgage attesting to the pay off of the loan in violation of Conn. Gen.Stat. § 49–8 (Complaint, Fourth Count ¶ 2, attached as Ex. A to Notice of Removal [doc. # 1]). Plaintiff conceded at oral argument that

---

4. As a consequence, this Court need not address the other arguments that Defendants

have advanced in support of their motions to dismiss.

neither of these claims implicate Defendant MetLife.

Each of the aforementioned claims against Defendant Financial Freedom arose after the events that gave rise to the *Reverse Mortgage Cases*, and therefore, they cannot be barred by the Final Judgment and Release. *See Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("as a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play"). Financial Freedom does not even argue that the release of mortgage claim—the second claim listed above—falls within the scope of the Final Judgment or Release.[5] The reconveyance preparation fee claim—the first claim above—presents a somewhat closer question since there is a suggestion that Plaintiff alleges that the fee itself is excessive. Claims of excessive fees under the reverse mortgage would be barred by the broad language of the Final Judgment and Release, as discussed above. However, the core of the Complaint's allegations regarding the reconveyance preparation fee is that the fee is not authorized under the terms of the loan agreement. Since the Final Judgment expressly reaffirmed all parties' obligations under the terms of the reverse mortgage, the Court does not believe that an after-arising breach of contract claim of the sort asserted by Plaintiff was intended to be, or should be barred by the Final Judgment and Release. Therefore, the Court will not dismiss Plaintiff's release of mortgage claim or reconveyance preparation fee claim on the basis of *res judicata* or release.

■ Financial Freedom asserts that even if these two claims are not barred by the Final Judgment and Release in the *Reverse Mortgage Cases*, the Court should nonetheless dismiss them because under the terms of the loan documents between Financial Freedom and Ms. Philibert, those claims must be arbitrated. The Court agrees that the parties must arbitrate these claims.

The parties' Loan Agreement and Note and Open–End Mortgage, which have been provided to the Court in connection with the motion to dismiss,[6] both provide as follows:

---

5. In its Supplemental Memorandum of Points and Authorities in Support of Motion to Dismiss [doc. # 43], Financial Freedom asserts that it has provided the release of mortgage sought by Plaintiff. Even if that assertion were true, and Plaintiff has not conceded it, at this stage of the proceeding, the Court cannot go outside the four corners of the Complaint, and the Court is unwilling to convert Defendants' motions to dismiss into a summary judgment motion.

6. In considering a motion to dismiss for failure to state a claim, a district court must "limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). If a judge looks to additional materials, the Rule 12(b)(6) motion to dismiss should be converted into a Rule 56 motion for summary

judgment. *Id.* According to the Second Circuit,

> [T]he harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered. Accordingly, "where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991)) (internal citation omitted). In light of *Chambers*, and because the Plaintiff relies on and refers to the loan agreement throughout her Complaint, see for example Complaint at ¶¶ 9–34, attached as Ex. A to Notice of Removal [doc. # 1], the Court may consider

*ARBITRATION.* Any controversy or claim arising out of or relating to this Loan Agreement, the Security Instrument or any other document relating to the Loan, the breach of any of them or the default under any of them, other than an action or proceeding to foreclose on the Property pursuant to the Security Instrument, will be settled by binding arbitration under the jurisdiction of the American Arbitration Association. Unless you or I otherwise agree in writing, the arbitration will be conducted in the county in which the Property is located. Judgment upon any award rendered by the arbitrator may be entered in any appropriate court. Such arbitration may not, however, without your consent, delay or adversely affect your ability to exercise any of the remedies available to you under this Security Agreement or under the Loan Agreement. Your pursuit of such remedies will not constitute a waiver by you of your rights to submit any controversy or claim to arbitration. . . .

Loan Agreement and Note at ¶ 20 (emphasis in original), attached as Ex. A to Decl. of James H. Fleming in Supp. of Mot. to Dismiss of Def. Financial Freedom Senior Funding Corp. [doc. # 25]; *see also* Open–End Mortgage at ¶ 20 (same), attached as Ex. B to Decl. of James H. Fleming in Supp. of Mot. to Dismiss of Def. Financial Freedom Senior Funding Corp. [doc. # 25].

██ Since the Loan Agreement is between a California and a Connecticut citizen and it involves interstate commerce, the Federal Arbitration Act ("FAA") governs the present dispute. *See* 9 U.S.C.

§ 1; *see also Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111–12, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); *Allied–Bruce Terminix Companies v. Dobson,* 513 U.S. 265, 273–81, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Southland Corp. v. Keating,* 465 U.S. 1, 15–16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The FAA provides that written agreements to arbitrate "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has repeatedly emphasized,

[t]he liberal federal policy favoring arbitration agreements, manifested by this provision and the act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements; the Act simply creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. . . . [The] preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, a concern which requires that we rigorously enforce agreements to arbitrate.

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (internal quotations and citations omitted); *see, e.g., Allied–Bruce Terminix Companies v. Dobson,* 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) ("[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate."). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that

the actual loan document on a motion to dismiss without converting it to a motion for summary judgment. Accordingly, the Court

need not, and does not, convert the motion to dismiss to a motion for summary judgment.

district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *see, e.g., WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75 (2d Cir.1997).

■ The parties' disputes—whether the reconveyance preparation fee accords with the provisions of their loan agreement, and whether Financial Freedom has failed to provide the release of mortgage required by Connecticut law upon pay-off of a mortgage—easily fall within the scope of the loan agreement's arbitration clause. The arbitration provision recited above is the paradigmatic, broadly worded arbitration clause. It provides for arbitration of "[a]ny controversy or claim arising out of or relating to this Security Instrument, the Loan Agreement or any other document relating to the Loan." *See* Loan Agreement and Note at ¶ 20 (emphasis removed), attached as Ex. A to Decl. of James H. Fleming in Supp. of Mot. to Dismiss of Def. Financial Freedom Senior Funding Corp. [doc. # 25]. The Second Circuit has repeatedly held that this is " 'precisely the kind of broad arbitration clause that justifies a presumption of arbitrability.' " *Mehler v. Terminix Int'l Companies*, 205 F.3d 44, 49 (2d Cir.2000) (quot-

ing *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir.1998)). Certainly, the allegations of the Complaint, which concern the parties' contractual obligations under the loan agreement, "touch matters" covered by the Agreement, *see Mehler*, 205 F.3d at 50, and that is all that is required to conclude that the parties agreed to arbitrate their present dispute. *See, e.g., WorldCrisa*, 129 F.3d at 75; *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir.1987).[7]

The only remaining question is whether the arbitration provision is valid and enforceable. In her opposition to Defendants' motions to dismiss, Plaintiff had argued that the arbitration clause was "one-sided in that it impose[sic] arbitration on plaintiff but authorizes defendants to pursue any remedies available to the lender under the loan documents." Mem. of Law in Opp'n to Defs.' Mot. to Dismiss [doc. # 35], at 12. However, following argument on Defendants' motions to dismiss, Plaintiff had a change of heart and decided that she was willing after all to arbitrate her claims against Defendants. *See* Pl.'s Resp. to Supplemental Mem. Regarding Mot. to Dismiss [doc. # 44], at 2; Pl.'s Supplemental Mem. Pertaining to Arbitration [doc. # 50], at 2. Therefore, this Court need not address Plaintiff's original argu-

---

7. The fact that Plaintiff's claims are based, in part, on CUTPA or Connecticut General Statutes § 49-8 is irrelevant. *See Discount Trophy Co. v. Plastic Dress–Up, Inc.*, No. Civ. 3:03CV2167(MRK), 2004 WL 350477, at *3 n. 5 (D.Conn. Feb. 19, 2004). The FAA deprives states of the authority to preclude arbitration of state statutory claims. *See, e.g., Circuit City*, 532 U.S. at 112, 121 S.Ct. 1302 (FAA "pre-emp[ts] state laws hostile to arbitration"); *Allied–Bruce Terminix*, 513 U.S. at 281, 115 S.Ct. 834 (same); *Southland Corp.*, 465 U.S. at 15–16, 104 S.Ct. 852 (same). Moreover, and in any event, there is no indication that the Connecticut General Assembly sought to preclude arbitration of CUTPA or

other statutory claims. State and federal courts have recognized that franchise law and CUTPA claims are fully arbitrable. *See, e.g., Mehler*, 205 F.3d at 49–50 (CUTPA claims arbitrable); *Doctor's Assoc., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir.1996) (franchisee's claims arbitrable); *McMahan Sec. Co. L.P. v. Forum Capital Markets L.P.*, 35 F.3d 82, 85–86 (2d Cir.1994) (CUTPA and unfair competition claims arbitrable); *Neary v. Prudential Ins. Co.*, Civ. No. 3:96CV1513 (AHN), 1997 WL 114789, at *4 (D.Conn. Feb. 24, 1997) (CUTPA claims arbitrable); *Success Centers, Inc. v. Huntington Learning Centers, Inc.*, 223 Conn. 761, 765, 613 A.2d 1320 (1992) (CUTPA claims arbitrable).

ments challenging the validity of the arbitration clause, arguments that Plaintiff has now abandoned. *See* Mem. of Law in Opp. to Defs.' Mot. to Dismiss [doc. # 35], at 11–12.

While Plaintiff's about-face regarding arbitration disposes of one issue—validity—it raises another—namely, whether the Court should have addressed Defendants' *res judicata* arguments regarding any of Plaintiff's claims, or whether, at least in the first instance, the Court should allow the arbitrators to consider all of Plaintiff's claims in this action as well as Defendants' *res judicata* defense. Ordinarily, once the Court concluded that the parties' dispute fell within the terms of an enforceable arbitration clause, it would not address the substantive merits of either Plaintiff's claims or Defendants' defenses, but instead would leave those issues, at least in the first instance, to the arbitrator. *See Shaw Group Inc. v. Triplefine Intern. Corp.,* 322 F.3d 115, 120 (2d Cir.2003) ("Pursuant to the FAA, the role of courts is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.' ") (quoting *Paine-Webber Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996)). Under the unique facts of this case, however, the Court concludes that Plaintiff has waived her right to arbitrate the claims that are based on or relate to the transactions and conduct that was the subject of the *Reverse Mortgage Cases,* and therefore, it is proper for the Court to have addressed Defendant's *res judicata* defense to those claims.

That Plaintiff had a change of heart about arbitration following briefing on the motions to dismiss would not, in and of itself, warrant a finding of waiver. It is not uncommon for litigants to rethink their positions following briefing and argument, and that fact alone, would not warrant a finding of waiver. The Second Circuit has repeatedly held that "there is a strong presumption in favor of arbitration [and] waiver of the right to arbitration is not to be lightly inferred." *Coca–Cola Bottling Co. v. Soft Drink & Brewery Workers Union,* 242 F.3d 52, 57 (2d Cir.2001); *see, e.g., PPG Indus., Inc. v. Webster Auto Parts, Inc.,* 128 F.3d 103, 107 (2d Cir.1997) ("any doubts concerning whether there has been a waiver are resolved in favor of arbitration") (internal quotation and citation omitted); *WorldCrisa,* 129 F.3d at 74 ("close questions as to whether a waiver of arbitration has occurred are to be resolved in favor of arbitration").

"The key to waiver analysis is prejudice. 'Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated.' " *Thyssen, Inc. v. Calypso Shipping. Corp., S.A.,* 310 F.3d 102, 105 (2d Cir.2003) (quoting *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985)). The Second Circuit has recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay:

> Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense.

*Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir.1991) (quoted in *Thyssen,* 310 F.3d at 105). Here, the parties' mere briefing on the motions to dismiss would not satisfy either of the Second Circuit's standards for prejudice.

██ However, as indicated previously, Ms. Philibert was a Class member in the *Reverse Mortgage Cases,* and the Class members in that case clearly opted to litigate, rather than arbitrate, the claims encompassed in the settlement of that action. Indeed, that litigation was hotly litigated for four and one-half years, and the California court held that the parties' arbitration clause was inapplicable to the claims asserted on behalf of the Class. *See In re Reverse Mortgage Cases,* No. A090060, Cal. Ct.App. Jan. 31, 2001 (affirming lower court decision that the arbitration clause was unenforceable under California law), attached as Ex. A to Defs.' Supplemental Mem. of Points and Authorities in Supp. of Mot. to Dismiss [doc. # 43]. Furthermore, the Final Judgment entered in the *Reverse Mortgage Cases* expressly enjoined the Class members (including, for the reasons stated above, Ms. Philibert) from bringing any "litigation *or arbitration*" relating to the released claims. *See* Final Judgment at ¶ 19 (emphasis added), attached as Ex. C to Req. for Jud. Not. [doc. # 26].

Given the extensive litigation of the Class claims that occurred in California and the express terms of the Final Judgment, which prohibits arbitration of any released claims, the Court has little difficulty concluding that as a member of the Class, Ms. Philibert waived any right she may have had to arbitrate the claims covered by the Final Judgment and Release. In short, under the unique facts of this case, Defendants have shown both substantive prejudice as well as prejudice due to excessive costs and time delay.[8] *Cf. Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir. 1993) ("An inquiry into whether an arbitra-

tion right has been waived is factually specific and not susceptible to bright line rules.").

The Court emphasizes that its conclusion regarding waiver applies only to the claims encompassed by the Final Judgment and Release. Plaintiff has not waived her right to insist on arbitration of the two claims that are not encompassed by the Final Judgment and Release, and both Plaintiff and Financial Freedom both now agree to arbitrate those claims. The Second Circuit has made it clear that in order to further the " 'liberal federal policy favoring arbitration agreements,' " a district court should ordinarily grant a stay when it decides that a dispute must be arbitrated, rather than dismissing the action and thereby triggering appeal rights and the delay attendant to such appeals. *Salim Oleochemicals v. M/V Shropshire,* 278 F.3d 90, 93 (2d Cir.2002) (quoting *Ermenegildo Zegna Corp. v. Zegna,* 133 F.3d 177, 180 (2d Cir.1998)). Accordingly, the Court will stay this action pending arbitration of the two claims against Financial Freedom that this Court has not dismissed on grounds of *res judicata.*

## IV.

In summary and for the reasons stated above, the Court:

1. GRANTS Financial Freedom's and Transamerica HomeFirst's Request for Judicial Notice in Support of Motion to Dismiss [doc. # 26];

2. GRANTS Metlife's Motion to Dismiss [doc. # 28] in its entirety. MetLife is hereby dismissed from this case.

8. Because of this Court's conclusion regarding waiver, the Court need not address MetLife's argument that it is not a party to the arbitration clause in the Loan Agreement and therefore that it cannot be required to arbitrate Plaintiff's claims. *See* Supplemental Re-

ply Mem. of Law in Supp. of Def. MetLife's Mot. to Dismiss [doc. # 47] at 3–4. Nor need this Court address the other arguments set forth in Financial Freedom's Supplemental Reply Memorandum of Law in Support of its Motion to Dismiss [doc. # 51].

3. GRANTS IN PART and DENIES IN PART Financial Freedom's and Transamerica Homefirst's Motion to Dismiss [doc. # 22]. All of the claims against Financial Freedom and Homefirst are dismissed with the exception of the following claims:

(a) Plaintiff's claim that the amount that Ms. Philibert was required to pay in order to pay off her loan in February 2, 2004 included a charge of $65.00 for a reconveyance preparation fee that was not authorized by the mortgage agreement in violation of the Connecticut's Creditors' Collection Act, Conn. Gen.Stat. § 36a–645 to –647 and CUTPA (Complaint at Third Count ¶ 32, attached as Ex. A to Notice of Removal [doc. # 1]); and (b) Plaintiff's claim that despite paying off the loan in 2004, Financial Freedom has failed to deliver a release of mortgage attesting to the pay off of the loan in violation of Conn. Gen.Stat. § 49–8 (Complaint at Fourth Count ¶ 2, attached as Ex. A to Notice of Removal [doc. # 1]).

4. Because the two non-dismissed claims against Financial Freedom are subject to a valid arbitration provision, the Court GRANTS Defendant's motion to stay this action pending arbitration of the two non-dismissed claims. Plaintiff and Financial Freedom are ordered to provide the Court with a joint written status report on the progress of the arbitration of those claims on or before July 1, 2005. In the interim, the Clerk is ordered to administratively close this file.

IT IS SO ORDERED.